## Case No. 5,966.

### HALSEY v. HURD et al.

[6 McLean, 14.] [1]

Circuit Court, D. Michigan. June Term, 1853.

WRITS—DEFECTIVE SERVICE—EFFECT OF PLEA IN ABATEMENT.

A plea in abatement is not a waiver of process. The plea may be abandoned, and a motion to quash the writ for a defective service, may be substituted. Where there has been no personal service, the requisites of the statute which are in place of it, must be strictly complied with.

[Cited in Van Antwerp v. Hulburd, Case No. 16,826; Rubel v. Beaver Falls Cutlery Co., 22 Fed. 284; U. S. v. American Bell Tel. Co., 29 Fed. 28.]

At law.

Howard & Wendall, for plaintiff.

Mr. Frazer, for defendant.

## Case No. 5,967.

### HALSEY et al. v. HURD et al.

[6 McLean, 102.] [1]

Circuit Court, D. Michigan. June Term, 1854.

WRITTEN CONTRACT — PAROL EVIDENCE TO SUPPLY DEFICIENCIES—DELAY OF COMMON CARRIER—MEASURE OF DAMAGES.

1. Where a contract was made for the purchase of a quantity of wheat at Detroit, to be delivered in the spring, on the opening of navigation, parol proof is admissible to show at what time payment was to be made.

2. This does not vary the written agreement nor contradict it, as by the agreement no time of payment was specified. Where it was agreed that the money should be transmitted through the express, the delays to which that conveyance was subjected, by the badness of the roads, is within the agreement.

3. On a failure to deliver an article, at the time specified, the purchaser may claim, as damages, the difference between the contract price of the article purchased, at the time the delivery was to be made, and the current price of the article at the time and place of the delivery.

[1] [Reported by Hon. John McLean, Circuit Justice.]

[This was an action by the firm of R. & H. Halsey to recover from J. L. Hurd & Co. damages for failure to deliver wheat.]

Howard & Mandell, for plaintiffs.

Mr. Frazer, for defendants.

OPINION OF THE COURT. The partnership of the plaintiffs, and also that of the defendants, is admitted. The action is brought on a contract to deliver wheat. It is dated the 30th of January, 1852, at Detroit, and is as follows:

"Mr. R. & H. Halsey, Bo't of J. L. Hurd & Co., the following lots of pure white Michigan wheat, first quality, sound and merchantable, to be delivered free on board vessel on opening of navigation.

| | |
|---|---|
| Five thousand bushels at 72 cents.. | $3.600 00 |
| Five thousand bushels at 73 cents.. | 3,675 00 |
| | $7,275 00 |

"Received on account of the above $100, signed,                    J. L. Hurd & Co."

Samuel Lewis, a witness, was present at an interview between the plaintiffs and Stewart, one of the defendants. The bill for the 10,000 bushels of wheat was in the hand writing of Stewart. Halsey told Stewart that he had come prepared to pay for the wheat; Stewart said that he should not, and did not intend to deliver it; Halsey said he had the money in the hands of Lewis & Graves, of Detroit; Stewart said he had not the wheat. Navigation was then open. Before the navigation was open, Halsey said to Stewart that the money was in the hands of the above firm. It was received by them the 13th of February, and they retained it until the middle of July.

The defendants' counsel asked the witness what time the money was to be paid. This was objected to, as changing the legal effect of the contract. That by the legal effect of the contract, the wheat was to be paid for when it was delivered; and that parol evidence is inadmissible to change the terms of the contract, or in any respect to vary the legal effect of it. But the court said that the evidence offered did not alter, in any respect, the written terms of the contract; that the time of payment was not specified, and in such case the construction would be, that the payment was to be made when the article was delivered. But this was an inference of law, which the agreement of the parties might vary, by fixing a different time for payment. That on such contracts it was customary to advance the money, in order that the seller might purchase the article on better terms. And this not being a part of the written contract, may be approved by parol. It does not, in the sense of the books, contradict or vary the written agreement. If the time of payment be stated in the written agreement, and the vendor give further time for payment, and it be made within the extended time, it constitutes a good defense.

In Susquehanna Bridge Co. v. Evans [Case No. 13,635], the judge says, "the reasons which forbid the admission of parol evidence to alter or explain written agreements and other instruments, do not apply to those contracts implied by operation of law, such as that which the law implies with respect to the endorser of a note of hand." In Hill v. Ely, 5 Serg. & R. 362, it is held, parol evidence is admissible in a suit by the endorsee against the endorser of a note endorsed in blank, to show that at the time of the endorsement the endorsee received it under an agreement, that he should not have recourse upon it against the endorser. In Battles v. Fobes, 21 Pick. 239, parol evidence was held admissible to prove the time at which a specialty was actually executed, contrary to the date. In Bradley v. Washington Steam Packet, 13 Pet. [38 U. S.] 99, the court held, "that in giving effect to a written contract by applying it to its proper subject matter, extrinsic evidence may be admitted to prove the circumstances under which it was made; whenever without the aid of such evidence, such application could not be made in the particular case." In Davenport v. Mason, 15 Mass. 85, it is said, "parol evidence may be admitted to establish an independent fact, or to prove a collateral agreement incidentally connected with the stipulations of a deed or other contract." In United States v. Leffler, 11 Pet. [36 U. S.] 86; it was held that a surety, in a joint and several bond may show that he signed it on condition that others, besides those whose names are to it, would execute it, and that their signatures were not procured.

Lewis, a witness, said, at the time the contract was made, it was agreed that the money should be paid as soon as it could be forwarded by express, and the defendant said that a few days would make no difference. Mr. Fargo, agent of the express at the above time, states, that the travel of the express was then by land, and it was from seven to nine days, and sometimes longer, in travelling from Buffalo by Cleveland to Detroit. The money was received by Lewis on the 13th of February. Some four or five days before the money was received, Stewart called on Lewis for the money, who informed him it was expected daily; and on calling again two or three days afterwards, saying he had some notes to pay in bank, witness offered to loan the money to him, which he declined. After this the witness met Stewart in the street, and proposed to advance him the money on railroad certificates, that the wheat was in the warehouse; but Stewart refused, saying, he had bought wheat in the interior; but as Halsey had failed to advance the money, he would not comply with the contract. From the time the contract was made, to the receipt of the money by Lewis, thirteen or fourteen days elapsed, which exceeded by four or five days the time within which the money was expected to be transmitted from Ithaca. The navigation of the lake opened from the 10th to the 15th of May. Several witnesses proved the price of wheat, at Detroit, at the time the navigation opened. There was some discrepancy in the statement of one or two witnesses called by the defendant, and the witnesses of the plaintiff.

THE COURT instructed the jury that from the parol evidence, the defendants agreed to the mode of payment stipulated, through the express, the defendants observing a few days would make no difference. After the contract, Halsey was to return to Ithaca, in New York, his place of residence, and from which the money was to be transmitted to Mr. Lewis, his agent at Detroit. It was supposed that this could be accomplished in some seven or eight days. But it was thirteen or fourteen days before the money was actually received. In the month of February it was shown, that the road the express travelled, in many places was almost impassable, and that it was liable to be delayed by high waters and various casualties. If it appear, gentlemen, from the evidence, that there was no-delay on the part of Halsey, but that he forwarded the money by the express, as he agreed to do; and the delay was principally, if not entirely, owing to the badness of the road travelled by the express, he is not chargeable with any laches, which would discharge the defendants from the obligations of their contract. In consenting to receive the money through the express, it is reasonable to say that they incurred the chance of a short delay, which amounted to no more than a few days, and which they said would make no difference. That the defendants were desirous of avoiding their contract is manifest, from the fact that at the time navigation opened, wheat was somewhat higher than the prices stipulated in the contract. The money was ready for the defendants, three months before the navigation opened, which would seem to be a reasonable time within which to make their purchases. If you are satisfied, gentlemen, that the plaintiffs have substantially complied with their agreement, they are entitled to recover the damages they have sustained, by reason of the failure of the defendants. These damages arise from the fact, that at the opening of navigation, when the wheat was to be delivered, it bore a higher price, at Detroit, than the price stipulated to be paid in the contract. This difference, together with the hundred dollars advanced by the plaintiff, at the time of the contract, with the interest thereon, will form your verdict, if you find for the plaintiff.

The jury found for the plaintiff $520.