59   624
61   359
59   624
68   354
69   273
69   275
69   276
69   277
69   280
59   624
79   379
59   624
86   367
59   624
95   302
59   624
157  401

ELIZA NORTH v. CHAUNCEY JOSLIN, CIRCUIT JUDGE AND W. D. HARRIMAN, PROBATE JUDGE OF WASHTENAW COUNTY.

*Certiorari—Affidavits of third persons no part of return—Probate court—Jurisdiction to appoint guardians for incompetent persons derived from statute — Petition must be filed in county where alleged incompetent resides — Written notice must be personally served on such person, and given under order of probate judge—Decree adjudicating incompetency, etc., essential and it should be recorded—Notice, under section 1742 How. Stat., must be given to relative of poor person sought to be charged with his support.*

1. Affidavits of third parties, in answer to facts set up in petition for certiorari, cannot be received as a part of the return.

2. The probate court derives its jurisdiction to appoint guardians for insane and incompetent persons, entirely from the statutes [How. Stat. §§ 6314, 6315], the provisions of which must be strictly pursued.

3. The petition for such appointment can only be filed in the county where the alleged incompetent person resides, and no hearing can be had, or appointment made, except on at least fourteen days' notice, in writing, to such person of the time and place of such hearing, which notice must be personally served, and this is absolutely essential to give the court jurisdiction.

4. It is not enough that such person may have learned of the pendency of the proceeding. The notice must be given under the order of the judge of probate, and in writing.

5. A mentally incompetent person cannot consent to any legal proceedings so as to waive any of his legal rights relating thereto; and, if competent, the probate court has no power to appoint a guardian for him or his estate, even if all his relatives and friends should so request, and he desire and consent to such appointment.

6. A decree by the probate court, adjudging an alleged incompetent person to be mentally incompetent to take care of himself and manage his property, is essential, and such adjudication should appear of record.

7. Notice to the relative of a poor person, sought to be charged with his support under How. Stat. § 1742, is essential to confer jurisdiction on the circuit court of the proper county to make any order in the premises.

Certiorari to set aside order of probate court appointing a guardian for an alleged incompetent person, and of circuit court adjudging a relative liable for the support of a poor person.

Argued January 21, 1886.　Decided February 10, 1886.

The facts are stated in the opinion.

*Sawyer & Knowlton* and *F. A. Baker*, for petitioner:

#### CIRCUIT COURT PROCEEDINGS.

The circuit court never acquired jurisdiction of the person of Mrs. North, the statutory notice not being given her: How. Stat. § 1742. Where a statute prescribes the mode of acquiring jurisdiction of the person that mode must be complied with or the proceedings will be a nullity: *Bloom v. Burdick*, 1 Hill, 130 ; *Merrill v. Montgomery*, 25 Mich. 73 ; *Halsey v. Hurd*, 6 McLean, 14; *Smith v. Rice*, 11 Mass. 506–12. This is a summary proceeding, not according to the course of the common law, and those who wish to avail themselves of this statute must be confined strictly to its provisions : *Smith v. Superintendents*, 34 Mich. 58 ; *Logwood v. Huntsville Bank*, Minor (Ala.) 23 ; *Childress v. McGehee*, Ib. 131 ; *Crawford v. State*, Ib. 143 ; *Yancey v. Hankins*, Ib. 171 ; *Hamilton v. Probate Court of North Providence*, 9

R. I. 204; *Bloom v. Burdick*, 1 Hill. 130. Parties to, or affected by judicial proceedings, whether in Rem or Personam, are by law entitled to notice by service of process or citation, and such notice is essential to jurisdiction : Smith's Probate Law, 94–5 ; *Palmer v. Oakley*, 2 Doug. 433 ; *Smith v. Rice*, 11 Mass. 512 ; *In re Whitenack*, 3 N. J. Eq. 252. The failure to give such notice to Mrs. North, personally or by leaving same at her place of residence, rendered the order of the circuit court for the support of Charles a nullity : *Kiser v. Overseers*, 3 N. J. L. (2 Pen.) 410 ; *Allis v. Morton*, 4 Gray 63 ; *Hathaway v. Clark*, 5 Pick. 490 ; *Smith v. Rice*, 11 Mass. 506.

The statute permits the superintendents of the poor of the county where the poor person *may be*, to apply to the circuit court of the county where the relative sought to be charged with his support *may dwell*, for an order for such support : How. Stat. § 1742. The words, " may dwell," as here used, not only cover the place of residence but " sojourners " also, because there is no provision in the statute for obtaining jurisdiction of the person, where the party proceeded against is beyond the jurisdiction of a court, by publication or otherwise; hence the application must show that such party is a resident of the county where application is made, or at least must *not show* that he is a sojourner beyond the jurisdiction of the court.

This statute cannot be made to reach cases not provided for or contemplated by its terms. It confers upon the court power only to " order such of the relatives of the poor person. as appear to be of sufficient ability, to relieve and maintain him : How. Stat. § 1743, and makes no provision for compelling the *estate* of a relative, living or dead, to support a poor person. It names father, mother and children and stops there [section 1741] and only applies to such of those as appear to be of *sufficient ability*, and this refers to mental as well as financial ability. This is manifest from the order to be made by the court, which is in no sense a judgment : *Smith v. Superintendents*, 34 Mich. 58, and if the order is not complied with no execution can issue, but it must be enforced by attachment : How. Stat. § 1747; *Smith v. Superintendents*, 34 Mich. 58, or under sections 1747–8 by an action against such *relative* as for moneys paid, laid out and expended. The statute confers a right and gives a remedy for its violation and cannot be enlarged beyond its purpose : *Thurston v. Prentiss*, 1 Mich. 193 ; *Renwick v. Morris*, 7 Hill, 575 ; *Smith v. Lockwood*, 13 Barb. 209.

The order made is a judgment or order against the guardians, as such, and directs them to confiscate the ward's estate to satisfy the same. A guardian cannot be sued in his representative capacity so as to render the estate of his ward liable. The suit or proceeding must be against the ward, and then if the guardian fails to pay the judgment his bond may be put in suit; *Raymond v. Sawyer*, 37 Me. 406; *Robinson v. Hersey*, 60 Me. 225; *Allen v. Hoppin*, 9 R. I. 258; *Dalton v. Jones*, 51 Miss. 585. An order for future support only can be granted: How. Stat. § 1743; *Wethersfield v. Montague*, 3 Conn. 507; *Cook v. Bradley*, 7 Conn. 57. There is no common-law liability to support needy relatives and the statute does not authorize a volunteer to create a debt: *Stone v. Stone*, 32 Conn. 142; *Gray v. Spalding*, 58 N. H. 345; *Mills v. Wyman*, 3 Pick. 207; *Jasper County v. Osborn*, 59 Iowa, 208; *Raymond v. Loyl*, 10 Barb. 483; Schuler Domestic Rel. 318–19, hence no legal liability arises or indebtedness exists until the order of the court is made fixing such liability: *Loomis v. Newhall*, 15 Pick. 159; *Stone v. Stone*, 32 Conn. 142.

### PROBATE PROCEEDINGS.

It may be contended that the appearance of the general guardian was a waiver of all irregularities and that Mrs. North, being under guardianship, cannot maintain any action in her own name. Our answer is that the proceedings in the probate court were without jurisdiction and void.

The probate court derives its jurisdiction to appoint guardians for insane and incompetent persons solely from How. Stat § 6314–15; and such appointment must be made on a fourteen days' notice to the supposed incompetent person of the time and place of hearing. When a statute requires service to be made upon the person, it means *personal* service, unless some other form is specified or indicated: *Rathbun v. Acker*, 18 Barb. 393; *State v. Jacobs*, 2 Jones (N. C.) 52; *Gorham v. Luckett*, 6 B. Mon. 146, and such notice must be in writing: *Pearson v. Lovejoy*, 53 Barb. 407; *Wright v. Doolittle*, 5 Vt. 390, and the notice contemplated by this statute is absolutely essential to confer jurisdiction: *Smith v. Burlingame*, 4 Mason 121; *Allis v. Morton*, 4 Gray, 63; *Conkey v. Kingman*, 24 Pick. 115; *Chase v. Hathaway*, 14 Mass. 222, and it is not enough that Mrs. North may have learned of the pendency of such proceedings by letter from Gruner: *Rathbun v. Acker*, 18 Barb. 393; *Potwine's Appeal*, 31 Conn. 381; *Pearson v. Lovejoy*, 53 Barb. 407. Nor did

her claimed appearance at the time and place of hearing waive her right to such statutory notice : *Matter of White-nack*, 3 N. J. Eq. 252 ; *Morton v. Sims*, 64 Ga. 298, 303 ; *Yancey·v. Hankins*, 1 Ala. 171, 172.

There was no order or decree made by the probate judge on said hearing adjudging Eliza North "incapable of taking care of herself and managing her property," and without such adjudication the judge had no power to appoint a guardian : *Smith v. Burlingame*, 4 Mason, 121 ; *Chase v. Hathaway*, 14 Mass. 222 ; *Hovey v. Harmon*, 49 Me. 269, 276 ; *Conkey v. Kingman*, 24 Pick. 115 ; *White v. Palmer*, 4 Mass. 149 ; *McCurry v. Hooper*, 12 Ala. 823 ; *Eslava v. Lepretre*, 21 Ala. 504 ; *Wait v. Maxwell*, 5 Pick. 217 ; *Hathaway v. Clark*, Ib. 490 ; *Holden v. Scanlin*, 30 Vt. 177. It is claimed that such adjudication was announced by the judge of probate, but such decree must appear of record and cannot rest in memory alone : *Holden v. Scanlin*, 30 Vt. 177 ; *Chase v. Hathaway*, 14 Mass. 222–6 ; *Eslava v. Lepretre*, 21 Ala. .505–22. The judge of probate is only authorized to appoint guardians of incompetent persons when they are residents of the county and within the jurisdiction of his court : *Duke v State*, 57 Miss. 229 ; *Lettle Estate*, Myrick's Probate (Cal.) 97, and the petition discloses that Mrs. North had been absent from the State for several months, hence the probate court had no jurisdiction. But, admitting that the appointment of the guardians was valid, and the proceedings in the circuit court, in reality against Mrs. North, and the appearance for her, in fact, still the guardians had no right to so appear and their appearance conferred no jurisdiction on the court to act : 4 Wash. C. C. 207. To enable a statutory guardian to bind his ward by appearing in court, authority therefor must be found in the statute : *Gibson v. Rees*, 50 Ill. 386–9 ; *Matter of Stratton*, 1 John. 509 ; *Sharp v. Pell*, 10 John. 486. A defendant, *non compos mentis*, if of full age, should appear by attorney and not by guardian : *Stigers v. Brent*, 50 Md. 217 ; *King v. Robinson*, 33 Me. 114.

Mrs. North may take this proceeding in her own name and in her own right, because (*a*) the question of jurisdiction is always an open one, and a judgment rendered without it is a nullity, and may be so treated when it comes in question collaterally : *Conkey v. Kingman*, 24 Pick. 115 ; *Miller v. Snyder*, 6 Ind. 1 ; *Mobley v. Mobley*, 9 Ga. 247 ; (*b*) If not a direct, it is in the nature of a direct, proceeding to set aside the appointment : *Messenger v Bliss*, 35 Ohio St. 592 ; *Linton v. Walker*, 8 Fla. 144 ; *Cuneo v. Besoni*,

63 Ind. 524; (c) And the writ of certiorari is a writ of discretion, and rests in the discretion of the court.

*E. D. Kinne,* for respondents:

The proceedings sought to be set aside, attempted to preserve the estate of the petitioner and secure the compulsory support, care and maintenance, by her, of a pauper, idiot son. Manifestly these purposes are humane, and eminently just and wise, and unless some one has been misused, some rights invaded, or some principle of law violated, it would seem as if such proceedings ought not to be disturbed.

The first objection urged is that proper notice of the petition for the appointment of a guardian was not given. If, at that time, Eliza North was a non-resident of Michigan, as is claimed by her counsel, then the requisite statutory notice was given : How. Stat. 6334; but the return of the probate judge shows that he found her to be a resident of this State, and the decree recites the fact to have been established. But all question of due notice was waived by petitioner's actual appearance in person, in the probate court, on the day assigned for the hearing of the petition : *Pixley v. Winchell,* 7 Cow. 366; *Rowley v. Stoddard,* 7 John. 207; *Vose v. Cockcroft,* 44 N. Y. 415; *Christal v. Kelly,* 88 N. Y. 285; *People v. Hydrostatic Paper Co.* 88 N. Y. 623; *O. & L. C. R. R. Co. v. V. & C. R. R. Co.* 63 N. Y. 176; *Matter of the application of Cooper, etc.,* 93 N. Y. 507; *McCombs v. Johnson,* 47 Mich. 592.

The return shows the presence of both Mrs. North and Mrs. Gibson, and of their counsel, and that petitioner submitted herself to the jurisdiction of the court; that she was present during the entire hearing and when the decree was made, and announced that no objection would be made if their wishes were consulted in the selection of the guardians. The requirement of fourteen days notice has no other object than to protect the alleged incompetent, and this purpose was subserved. She had an opportunity to be heard, and her "day in court." No appeal has been taken, and the petitioner and her friends have for nearly a year acquiesced in the proceedings, and fully recognized the authority of the guardians.

While petitioner is under guardianship she cannot review, in her own name, the action taken.

It is urged that petitioner was not subject to the statutes, because temporarily at Kansas City. The application shows that she is a resident of Washtenaw county, and the return

of the circuit judge shows that such residence was established by the proofs. The statute contemplates a summary remedy, and is not very cautious in prescribing the character of the service of the application. No option is left to the relative, but in the order named he or she will be compelled to contribute. In this case the requisite notice was served upon the legal representatives of the estate and person of petitioner, and it was their duty to protect the estate of their ward, and defend in good faith. Perry on Trusts, §§ 328, 329, 330; *Brasher v. Van Cortlandt*, 2 John. Ch. 242; *Teal v. Woodworth*, 3 Paige Ch. 475, and it would seem as if service of process on an incompetent ought not to be tolerated. The recitals in the decree bring the case within the statute (section 1744). It is also urged that there was no evidence before the circuit court that Mr. Gruner and Mr. Cramer were the guardians of petitioner or her estate. The decree and return of Circuit judge dispute this claim.

SHERWOOD, J.  The certiorari in this case brings before us the proceedings had on the appointment of a guardian for the plaintiff in the probate court for the county of Washtenaw.

Also the proceedings had in the circuit court, for the same county, on the petition of the superintendents of the poor of the county of Washtenaw, for an order to compel the plaintiff, or her estate, to support and maintain Charles North, her insane son, and that the guardians of the plaintiff may be compelled to support him out of the plaintiff's property, and the order of the circuit judge made thereon.

The record in the case shows that Eliza North, previous to the twelfth day of June, 1884, had resided in the county of Washtenaw forty years; that she is eighty-four years old, and is the owner of property to the amount of about $30,000, and has been for many years; that her property consists of an undivided half of a good farm in the town of Pittsfield, in said county, her interest therein being worth $5,000, and the remainder of her estate consisting of notes, mortgages and accounts; that her husband, Lewis North, died in May, 1882; that their surviving children are Elmira P. Howe, residing in Pittsfield; John D. North, in Jackson; Charles

North, in Pittsfield; Mary E. Baker, in Illinois; and Hannah E. Gibson, in Kansas City, Missouri.

It also appears that all the children of plaintiff, except the youngest, the insane son, who is now forty-four years old, are married; that the Pittsfield farm is very productive, and yields a large income: that the son Charles has been insane about twenty years, and for several years Mrs. Howe took charge of and supported Charles, and boarded her father and mother at her own home, for which plaintiff paid her five dollars per week; that eight years since the plaintiff and her husband, with Charles, moved on the Pittsfield farm, and Mrs. Howe, with her family, moved into the house with them, and occupied the farm and used the same under the agreement that the plaintiff and Mrs. Howe should each pay half the farm expenses, including taxes, also half of the grocery bills, and that Mrs. Howe should run the farm and have the proceeds thereof, and in consideration thereof the plaintiff, her husband, and insane son should receive their board; that this arrangement continued until the death of plaintiff's husband, and thereafter until she went to Kansas City, about the fourteenth of June, 1884; that about that time the plaintiff made a contract with Mrs. Howe to maintain and support Charles for the use of the farm; and that under this arrangement she left her insane son with Mrs. Howe when she went with her daughter, Mrs. Gibson, to her home in Kansas City.

The petition in the case further states that at the time Mrs. North left Pittsfield to go west she did not owe Mrs. Howe anything; that she had always managed her own business, and was abundantly capable of doing so; that she had previously made her will and deposited it with the judge of probate in Washtenaw county; that she held her notes, bonds and mortgages, and had them with her; that thinking it would be more convenient for the makers thereof if the same were left with some person at Ann Arbor, she had decided to deposit them in the savings bank at that place, and, upon the suggestion of Mrs. Howe, she called on Leonard Gruner, of that city, just as she was leaving for the west, he

being connected with the bank, and having before invested some of plaintiff's means, and asked him if he would attend to her matters in that county if she needed an agent, and he informed her he would. She then told him she had her papers with her, and would deposit them in the savings bank, and if she needed any assistance she would call on him ; that he then volunteered to take her papers to the bank, and she let him have them, supposing he would take a receipt for them in her name. This, as she afterwards learned, he did not do, but placed them in his own name ; that she went with her daughter to Kansas City ; that on the nineteenth of September some of her papers needed looking after, and on that day she caused the following letter to be written by her daughter to Mr. Gruner :

"Kansas City, Mo., September 19, 1884.

"Mr. Gruner—*Dear Sir*: Mrs. North, of Pittsfield, now in Kansas City, Mo., wishes to know if you are willing to act as her power of attorney and look after her business there, as she has decided not to return home till spring and perhaps not then. She wishes to know what per cent. you will charge in collecting and investing her moneys, and if at each collection or investment that you should make she would have you keep out your percentage, or any other business you may do, to let her know the expense. She has a great dislike to having any debts unpaid. She will make you as little trouble as possible. If you will accept the power of attorney you will greatly oblige Mrs. North ; and she will have it made out here and send to you as soon as she receives an answer to this.                       Mrs. H. E. Gibson."

That to this letter Mr. Gruner made the following reply :

"Ann Arbor, Mich., September 24, 1884.

"Mrs. H. E. Gibson, Kansas City : Your kind letter of the 19th has been received. . I have been notified that in our probate court an application for the appointment of a guardian for Mrs. E. North, your mother, has been made, and if agreeable and satisfactory to all parties I consent to be appointed as such guardian. Give the bonds required by the court. Expecting to hear from you, I remain,
          " Yours respectfully,            L. Gruner."

The plaintiff further states that this was the first intimation to her that she had been unfairly dealt by, or that there existed an intention on the part of Mrs. Howe or Mr. Gruner, or anybody else, that an attempt was to be made to control the free exercise of her own will, and at once caused the following reply to be made to this letter:

"KANSAS CITY, Mo., September 27, 1884.

"MR. GRUNER—*Dear Sir* : I received your letter of September 24th. I was surprised, and mother was greatly grieved, that any such application should have been made before the probate court to have a guardian appointed for Mrs. E. North. We know nothing whatever of that. Mother does not wish a guardian. She is perfectly capable of taking care of her own property herself. It was a power of attorney only that she wanted. She will not have a guardian. She is not childish. She is in good health. She and Mrs. Howe had trouble. Mrs. Howe did mother's business as if it were her own. If you will be appointed the power of attorney, she would like and so would I, but not a guardian. I will go back to Ann Arbor with mother in October, if it is necessary, and she can go before the probate court and prove that she does not need a guardian."

That on the same day Mr. Gruner wrote his last letter, Mrs. Howe and her brother John D. North made application to the probate court of Washtenaw county to have a guardian appointed of the person and estate of the plaintiff.

The plaintiff further states that receiving no satisfactory reply to her letter of the twenty-seventh of September to Gruner, and supposing her papers had been deposited in her own name, she sent a written order on the bank for them, with which the bank refused to comply, and she then learned for the first time that the receipt for her papers had not been taken in her name, and she then wrote to said Gruner to endorse her order upon the bank for her papers. This he refused to do, and thereupon, on the fourth day of October, she applied by letter to Densmore Cramer, an attorney at law residing in the city of Ann Arbor, asking him how much his fees would be to defend against the application for a guardian instituted by Mrs. Howe and her brother. In reply to

this application she received the following letter from Mr. Cramer:

"ANN ARBOR, October 6, 1884.

"ELIZA NORTH—*Dear Madam*: Yours mailed October 4th received. In reply would say that I can't always tell the amount of fees in such cases, but think it would cost you $25. If it had to be appealed to circuit it might cost more. This I will say, that if you wish me to act as your attorney I will do it faithfully and honorably and cheaply and satisfactorily. You can send me some money if you wish to engage me, and I will enter my appearance as your attorney.

"Respectfully,                    D. CRAMER."

After giving these letters the petition proceeds as follows:

"Deponent, fully believing and relying upon the statement of the said Cramer that her business would be faithfully, honorably, and satisfactorily done if placed in his hands, caused the said daughter Mrs. Gibson to write to said Cramer, under date of October 8th, the following letter:

"KANSAS CITY, Mo., October 8th.

"D. CRAMER — *Dear Sir*: Mrs. North, my mother, received yours of October 6th this morning. She sends you a five-dollar post-office note as your retaining fee. Mother and I expect to leave Kansas City for Ann Arbor on October 30th, or about that time. I think mother will be obliged to go to Ann Arbor and see to other business, if this petition for a guardian should be withdrawn, and will need your services."

Said letter also containing other matter in reference to business.

"On or about the twentieth of October deponent came to the city of Ann Arbor, called upon Mr. Cramer, conversed with him on the subject of the application for a guardian, and in reliance upon his statement in the letter, and also his statements to her that her business would be carefully, prudently, and honestly conducted, and with no knowledge that he had any personal interest in conflict with hers, deponent paid him twenty dollars, and intrusted her matters and interests to his care and management.

That at or about the date of the hearing of said matter in the probate court, which, as the deponent has been informed and believes, occurred on the twenty-seventh day of October,

1884, deponent had several conversations with said Cramer, in which he urged upon deponent the importance to her of having a guardian, and, among other reasons therefor, he stated that it would be very much better for her to have a guardian appointed, if she continued to live at Kansas City; that it would save the expense of a lawyer if she would choose him as her guardian; and if she would choose him (Cramer) as her guardian, deponent could do as she pleased with her property, could make over her will, and would be under no restraint whatever, and could dispose of her estate without restraint, just the same as if no guardian had been appointed, for he would have the appointment made simply on account of her age, and not because of any incompetency in deponent; repeating to her that if she put her matters in his hands they would be honestly, prudently, faithfully, and honorably managed, and without cost to her, except the little fees allowed by the statute, and that she could have the guardian removed whenever she desired, if she selected him; that said Cramer strongly advised deponent that it was much better for her not to oppose the proceedings, but to let him (Cramer), be appointed. After considering the matter, and supposing and believing that said Cramer had not deceived her in that behalf, deponent finally concluded not to appear, and did not appear or oppose the appointment of a guardian."

On the thirtieth day of October, Mrs. North applied by letters to obtain possession of the will she had made and left with the judge of probate. This request was refused by that officer. She then requested her attorney, Mr. Cramer, to obtain a copy of the will, and she was informed by him that he could not secure that for her, because it was sealed up in the office of the judge of probate. Failing to accomplish what she desired to in her matters relating to her business affairs while at Kansas City, she returned to Michigan, accompanied by her daughter Mrs. Gibson, and very· soon thereafter the following decree was made by the probate court.

" At a session of the probate court for the county of Washtenaw, holden at the probate office in the city of Ann Arbor on the twenty-seventh day of October, 1884, present William D. Harriman, judge of probate, *In the Matter of the Estate of Eliza North, incompetent,* John D. North comes into court and presents his petition duly verified, praying for the appointment of a guardian for said Eliza North, an incom-

petent person. And after a full hearing, it appearing satisfactorily to the court that the said Eliza North is a resident of said county of Washtenaw; that it is necessary that a guardian should be appointed for said incompetent person; and that Leonard Gruner and Densmore Cramer in said county, are competent and suitable persons for that trust; and Densmore Cramer, Esq., appearing for said incompetent person, and Edward D. Kinne appearing for said petitioner, and testimony being taken and duly considered,—it is ordered and decreed by the court that the said Leonard Gruner and Densmore Cramer be appointed guardians of said incompetent person. And the said guardians having now here filed a bond as such guardians in the penal sum of forty-five thousand dollars, with sufficient sureties, which said bond is duly approved. It is ordered that letters of guardianship issue to the said Leonard Gruner and Densmore Cramer. And it is further ordered that Emanuel Mann and Henry D. Platt, of the said county, be appointed appraisers, to appraise the estate of said incompetent person."

Upon the same day the guardians filed their bond, and letters of guardianship were issued to them. On the twelfth day of November following the guardians made an inventory of the plaintiff's property, wherein it appears that she was the owner of real estate to the value of $5,000, a district school bond, and ten mortgages of the value of $23,447.74; that she also had a claim against Mrs. Baker, called "doubtful," for $1,000; one against John D. North of $1,000, and two years' interest; one against Chas. G. North, of $1,500, and one against Mrs. Howe for $6,400; also, besides these, two cows, one horse, five hogs, a mower and reaper, etc., and household goods taken to the Pittsfield farm. These accounts are called "undivided" by the guardians, meaning, we presume, as belonging to the plaintiff and the estate of her late husband. It further appears that Mrs. North, with her family, have continued in possession of the farm and the rents and profits thereof until the present time, and which, according to the statement of the inventory, had not been accounted for up to the time of filing the same, on the seventeenth day of November, 1884.

At the solicitation and request of Mrs. Howe the superin-

tendents of the poor of Washtenaw county made an application to the circuit court of that county by petition, dated the fourteenth day of May, 1885, wherein they set forth, upon their information and belief, that Charles North, the son of plaintiff, is a pauper, and insane; that his father is dead, and when he died left all of his property in the name of his wife (this plaintiff), and it had been so kept many years; that she is a resident of Pittsfield, in said county, is about ninety years old, has five children, and that the insane son is the youngest, being about forty-four years old; that Mrs. Baker is poor; that Mrs. Howe and John D. North "are possessed of but modest means, and that Hannah E. Gibson is reputed to be possessed of about $1,500, or thereabouts;" that Mrs. North, the mother of Charles, is worth, as near as they can estimate her property, about $28,000; that, with the exception of $4,500, invested in good real estate, her property consists "of excellent paying investments in bonds and mortgages," and that her net income is $1,200 or $1,500 per annum; that during the life-time of the father "he faithfully cared for and supported his insane son;" that after his death the plaintiff faithfully supported him, until the fourteenth of June, 1884, when she went with her daughter Mrs. Gibson to Kansas City, and left the insane son with Mrs. Howe, without making any provision for his support, and she has neglected to do anything for his maintenance; that the mother, Mrs. North, and her property was placed under the guardianship of said Cramer and Gruner on the twenty-seventh day of October, 1884, and the petition asks that the estate may be compelled to relieve and maintain the said Charles North, and that the guardians may, by order of the circuit court, be directed to furnish from the estate of Mrs. North the necessary means for that purpose.

This petition was noticed upon Cramer and Gruner by Mr. E. D. Kinne, as attorney for the superintendents of the poor, to be presented to the circuit court on the fifteenth day of June, 1885. It further appears that on the fifteenth day of June, aforesaid, the said circuit court made and caused to be entered the following order in the premises:

" At a session of said court held at the court house in the city of Ann Arbor, on the fifteenth day of June, 1885. Present, Hon. Chauncey Joslin, circuit judge.

" In this matter, on reading and filing the application of the superintendents of the poor of said county of Washtenaw ; and after hearing the proofs and allegations thereunder, and E. D. Kinne, attorney in behalf thereof, and D. Cramer, Esq., attorney in behalf of Leonard Gruner and Densmore Cramer, the guardians of Eliza North, an incompetent person, in opposition thereto ; and it appearing satisfactorily to this Court from such proofs that the said Charles North is a poor person, impotent, insane, and decrepit, and without means of support ; that his father is dead, and died leaving no estate ; and that the said Charles North has no children ; and that his mother, Eliza North, is possessed of a large estate and income, and is of sufficient ability to support and maintain the said Charles North without encroachment upon her principal ; and that the said Eliza North and her estate is now under guardianship; and that the said Leonard Gruner and Densmore Cramer are the legal guardians of the estate ; and it further appearing that Elmira P. Howe has supported and maintained the said Charles North since the twelfth day of June, 1884, it is ordered, adjudged, and decreed that the same Leonard Gruner and Densmore Cramer, the guardians of the said Eliza North, pay to the said Elmira P. Howe the sum of one hundred and sixty-two dollars over the amount she has received, to apply on his support, in full satisfaction for the support of the said Charles North to the date of this order ; and that they pay to the said Elmira P. Howe the further sum of six dollars per week from and after this date, in monthly installments, for the support and maintenance of said Charles North, until the further order of this Court.

" It is further ordered that the said guardians pay the following costs of this application, namely :

" Clerk's fees　-　-　-　-　-　-　$ 3 00
" Attorney's fees　-　-　-　-　-　-　20 00

" C. Joslin, *Circuit Judge.*"

The petition for the writ in this case further shows that at the time of filing the petition in the said circuit court, and the making of the foregoing order, the plaintiff was in Kansas City ; that she had no notice or knowledge of any kind of the proceedings in said circuit court until some time after the order ; and said petition further states that no notice

whatever was issued or served personally, or in any other manner except that served upon Cramer and Gruner in the said matters, and that no other appears upon the files of said circuit court; that no showing was made in said circuit court that the said Cramer and Gruner were ever appointed guardians of the plaintiff and her estate; that about the first of July the plaintiff wrote to A. J. Sawyer, of the firm of Sawyer & Knowlton, residing at Ann Arbor, requesting him to look after her business there, and advise her what had been done and advise her what was necessary to be done to protect her rights and preserve her estate; that Mr. Sawyer reported to her the full proceedings had in both circuit and probate courts; and that such report contained the first knowledge she had of any of the proceedings in the circuit court, and contained the first information she had ever received apprising her fully of what had been done in the probate court; and thereupon she directed her attorneys, Sawyer & Knowlton, to take proper legal means to defend her rights; and that thereupon, in her behalf, they gave the following written notice to said Gruner and Cramer:

"GENTLEMEN—You, and each of you, are hereby notified not to make any payment to any person for the support of Charles North, and not to transfer any of my property for that purpose."

That plaintiff, previous to this, relying upon the truthfulness of the statements heretofore referred to of said Cramer, had written to Cramer and to Gruner to send her $100. To this request they made no reply, but subsequently wrote the following letter to Mrs. Gibson, her daughter, with whom she was staying in Kansas City:

"ANN ARBOR, August 19, 1885.
"MRS. HANNAH E. GIBSON—We have received an order lately from Sawyer & Knowlton, as attorneys for Mrs. North, forbidding us to pay anything for the support of Charles North, and one received from Mrs. North herself asking for one hundred dollars, neither of which do we recognize or pay any attention to. We have also heard that you have been trying to get Mr. Sanford, or some one else, to go your

security in order that you might start some kind of a suit, and as a result spend some of the old lady's money for the benefit of Sawyer & Knowlton: Now, we do not recognize the right of the old lady while under guardianship to order about her estate, nor employ attorneys, nor do we intend to allow her to spend her estate in that way, to please any of her children; but we do know our duty, and shall maintain it, and that is to preserve her estate, and only pay out what is necessary for her support and the support of Charles, of which we have the order of court for doing, and thus do our duty faithfully under our bonds. We cannot listen to the notions of Mrs. Howe or yourself, or any others, but must act legally and justly. We sent your mother $250, and will send more when we think it necessary for support (not for attorneys), and will do right and save the estate.

"Respectfully,    "D. Cramer.
    "L. Gruner."

The plaintiff further, in her petition, avers her competency in every respect to have the charge and management of her estate, and that she has always been thus competent so to do; and she further insists that the probate judge never had any jurisdiction of her person or estate in the proceedings had before him, and that the order appointing the said Cramer and Gruner her guardians is void; that in and by the decree of said probate court she has never been adjudged mentally incompetent to have the care and management of her person and estate; that she never had any legal or personal notice of the hearing of the case before the probate court in which the decree was made placing her under guardianship.

That the proceedings had by the superintendents of the poor in the circuit court were without proper notice to herself and the parties interested, and the circuit court for that reason obtained no jurisdiction in the case, and that the order made therein is also erroneous, for the reason that it directs the weekly allowance to be paid to Mrs. Howe and not to the superintendents; that as against the plaintiff and her estate it is erroneous, as it renders a judgment against her pretended guardians in favor of Mrs. Howe for $160, without any notice to her, and without any guardian ad litem

being appointed; and she prays that the order in both courts may be set aside and proceedings dismissed, and asks that this writ issue to remove the proceedings had in both courts to this Court, that such relief, or the proper relief, may be obtained. The writ was allowed by the late Chief Justice Cooley on the seventh day of September last.

The judge of probate and the judge of the circuit court for the county of Washtenaw each make return to the writ.

The judge of probate in making his return, after stating the proceedings as they transpired before him, and annexing thereto "all the orders, papers, judgments and decrees" made in the matters in his court, says: "As to the matters of fact set up in the petition for certiorari I have no knowledge, but respectfully submit the affidavits of D. Cramer, Leonard Gruner, and Elmira P. Howe, and ask to have them received as a part of this return." This, of course, cannot be done: *Whitbeck v. Hudson,* 50 Mich. 86; *People v. Mayor of N. Y.,* 2 Hill, 9; *Stone v. Mayor of N. Y.,* 25 Wend. 168; *Allen v. Merchant's Bank, of N. Y.,* 15 Wend. 482; 2 Burrill Pr. 168; Grah. Pr. 550; *Jackson v. People,* 9 Mich. 120; How. Stat. § 2125, S. C. rule 114, B. C. 401; Dowl. Pr. cases, 510. They constitute no part of the record in the case.

We have, however, at the earnest request of the learned counsel for the respondents, looked through them for the purpose of learning, if we could, what views these affiants could take of the case to warrant these most extraordinary proceedings on the part of those by whom they were instituted and prosecuted. It is true that in the affidavits many of the statements made in the plaintiff's petition are controverted, but the main and material facts therein stated, and shown by the return of the respondents, and the circumstances of the case narrated in the petition, are not essentially changed.

We have also not failed to notice the following closing paragraph of the return of the judge of probate, viz.:

"All of which I do hereby certify and return, as I am within commanded, with the additional and uncalled-for infor-

mation that, of all the foregoing progeny of Eliza North, *the best behaved and the most deserving of the consideration of your honorable court is her insane and idiotic son*, Charles North, whose fate will be sad, indeed, if either of the contending factions of children get control of this old lady's person and property, especially of her property, which is all they care about and all they are after."

This seems a somewhat remarkable statement of the feelings, conduct, and motives of a family of four children, three of whom are daughters, and all of whom are forty-five years of age and older, towards, as is claimed, an old and partially helpless and demented mother, and an insane and imbecile brother; and especially would this appear to be the case in view of the statement contained in the affidavit of Mr. Gruner, and which the judge of probate desires to have considered as a part of his return, that "Mrs. Howe had shown the fidelity and love of a true sister" for her brother Charles.

If the views of the probate judge are correct as to the feelings and motives of these children towards this unfortunate brother, it seems his case would be hardly less sad than that of the "aged, and alleged mentally incompetent, mother;" and if it is all true that is said of these children in this "uncalled-for information," and in these affidavits, it ought to serve as an admonition to increased vigilance on the part of the court, to whose judgment, prudence, and discretion the law has committed, in its humanity, the welfare, care, custody and control of such persons, and the management of their estates; that they should see to it that the law is not transgressed or violated to gratify the avarice or cupidity of any one.

No higher duty can be intrusted to any court than that of directing the care to be taken of the widow and the orphan, and the helpless and insane, and the disposition to be made of their property for that purpose.

This record raises the question whether or not such vigilance has been exercised; whether the law has been fully observed, and the rights of the old and infirm, and helplessly insane, have been properly guarded and protected by the pro-

bate court.   It quite sufficiently appears that up to the time
Mrs. North went to Kansas City, in June, 1884, she had so
managed her affairs and property as to furnish herself and
husband with a good home so long as he lived, as well as a
home for Mrs. Howe and her family at least seven or eight
years; that she had properly cared for and supported her
insane son Charles, and at the time of her husband's death
had preserved of her estate for her then future comfort and
support, and that of her son Charles, about $30,000, and had
it all well placed, in good paying investments, which brought
her an annual income of more than was needed for her own
support and the support of those whose dependence was
upon her.   Certainly this would not tend to show that she
was mentally incompetent to have the care and management
of her estate.   Neither does it appear from the record that
complaint had ever been made by her relatives, or any one
else, to that effect, previous to the time she went on a visit
to her daughter in Kansas.

It further appears that when her daughter Hannah came
to visit her such was the situation.   It also appears that Mrs.
Gibson was in comfortable circumstances, and invited her
mother to return with her; that Mrs. North made the neces-
sary arrangements for that purpose, placed the use of the
farm at Mrs. Howe's disposal to support her unfortunate son,
with whom he had for some time been living upon the farm;
thus, so far as appears, allowing Mrs. Howe more for his
care than she had before received, and after selecting the
person at Ann Arbor to transact her business there during
her absence, handed him her papers to place in the bank, and
with her daughter Mrs. Gibson left for Kansas City.   These
certainly were acts not indicating any mental incompetency,
but rather the qualities of a good business woman at the age
of eighty-three years.   She was in good health, and arrived
with the daughter at her home in Kansas City in due time.

It is not pretended, neither does the record show, that
any person from the county of Washtenaw, or from the State
of Michigan, saw Mrs. North until she returned to her home
in Michigan in the fall of 1884.

It would appear from the petition of plaintiff that when she left Ann Arbor she intended not to return until the following spring.    In September she had some business to attend to in Washtenaw county, and she caused to be written a letter to her agent at Ann Arbor, inquiring if he would attend to it, stating if he could she would forward to him a power of attorney for that purpose; and not until after the receipt of this letter does the record show was it ever intimated that she was mentally incompetent, and needed a guardian.    We have stated the correspondence which followed, so far as it appears in the petition and record.    It is only necessary to say that Mrs. Howe and her brother John filed a petition to secure the appointment of a guardian in the probate court, of the pendency of which, although Mrs. North had never received any legal notice from any source, still she desired to defend against the proceedings, and employed an attorney to make her defense.    He, however, did not make such defense, but, as appears from the proceedings, he remained silent in court; and, at the instance of the other side, allowed a decree for a guardianship to be entered, and he himself to be appointed one of her guardians.    Mrs. North was in the court-room at the time part of the proceedings were had, and the return of the probate judge says that she appeared in person and by Cramer, as her counsel, on the occasion; but it nowhere appears in his return that the court ever said a word to her, or that Mrs. North ever spoke to him, or that any inquiry was made of her by said Cramer, or by any other person in the room, while the so-called hearing was had, or that she understood, or had any comprehension, of the true character, scope, or effect of the proceedings then in progress.

From the foregoing summary of the proceedings taken in these two matters, it will be noticed that two of the children of this old lady, with such aid as they were able to secure from an agent with whom she had intrusted the care of securities to the amount of over $28,000, and a lawyer whom she had employed upon the promise that he would faithfully look after her rights and protect her interests, by a resort to

the probate and circuit courts in the county of Washtenaw, have been permitted, without any legal or proper notice given to her of the purposes to be accomplished, or of the proceedings intended to be taken, to consummate the intended object; and without any opportunity legally extended to her of even showing to the court her actual place of residence, she has been deprived of the legal right to the control of her person, and the possession of her homestead, the right to the custody, care, control, and management of her $30,000 worth of property, which has been taken and transferred to the management and control of said lawyer and agent, who assume to act, against her will and wish, as her guardians, and who have been allowed to distribute a portion thereof to a daughter on a pretended claim Mrs. North says she did not owe, but who, the record tends to show, owes her several thousand dollars; have allowed her insane and imbecile son to be declared a pauper, and permitted the superintendents of the poor to take his care and custody from her, and transfer it to said daughter, and procured an order from said circuit court, directed to those thus obtaining the management of her property, to pay to said daughter a weekly stipend for such service, leaving Mrs. North, at the age of eighty-four years, without the use of a dollar of all her property to secure the necessaries and comforts of life, and entirely dependent upon the tender mercies of those whom she regards as her enemies, and the cause of all her troubles and misfortunes, for her support. All these things are claimed to have been done in good faith, in the interest of justice and right, under the sanction of law, and in pursuance of legal proceedings, and should not now be disturbed. It seems to us quite clear that the courts of Washtenaw county have been imposed upon in obtaining these results.

It is difficult to imagine a more flagrant violation of the law—both of its letter and spirit—than is shown in the proceedings in this case. A more complete prostitution of justice cannot be found in our courts; and, when it is sought by this old lady to bring these extraordinary proceedings

before this court for review, she is denied, by those having control of her money, the use of a dollar with which to employ counsel who will aid, and not betray, her in her efforts to obtain relief and prevent the further absorption of her estate.

Such action by her and her counsel is characterized and criticised, in the interest of those who have practiced such imposition upon the courts, and have been the cause of all her grievances and oppression, as evincing the strongest evidence of mental infirmity in the one and moral turpitude in the other.

No court of last resort can ever tolerate with complacency such a course, or give its seal of approbation to such proceedings.

It is well for this unfortunate woman that she had one child who had both the heart and courage to stand by her old mother in these attacks upon her right to liberty and to her property, and it is a satisfaction for us to know that she has been fortunate enough in the end to secure the aid of counsel whose ability and integrity have not failed her, and, knowing their client's rights, will faithfully see that they are not imperiled, but enforced and protected. We see no occasion for the aspersion cast upon the action of Mrs. Gibson at the close of the return made by the judge of probate, or for any criticism upon the conduct of the case by counsel for Mrs. North in this Court.

The probate court derives its jurisdiction to appoint guardians for insane and incompetent persons entirely from the statute (How. Stat. §§ 6314, 6315), and in order to obtain jurisdiction in such cases the provisions of the statute must be strictly pursued. The petition can only be filed in the county where the incompetent resides, and no hearing can be had, or appointment made, until such incompetent has had at least fourteen days' previous notice of the time and place when and where such hearing is to be had, and such notice must be personally served, and must be a written one, and this is absolutely essential to give the court jurisdiction: *Rathbun v. Acker*, 18 Barb. 393; *Pearson v. Lovejoy*, 53

Barb. 407; *Wright v. Dolittle,* 5 Vt. 390; *State v. Jacobs,* 2 Jones, 52; *Gorham v. Luckett,* 6 B. Mon. 146; *Smith v. Burlingame,* 4 Mason, 121; *Allis v. Morton,* 4 Gray, 63; *Conkey v. Kingman,* 24 Pick. 115; *Chase v. Hathaway,* 14 Mass. 222; *McCurry v. Hooper,* 12 Ala. 823; *Arrington v. Arrington,* 32 Ark. 674; *Nolte v. His Creditors,* 7 La. (N. S.) 643.

No such notice was given to Mrs. North.

It is not enough that she may have learned of the pendency of such proceeding from Gruner. The notice must be not only a written one, but must be given under the order of the judge of probate: *Potwine's Appeal,* 31 Conn. 381; *Pearson v. Lovejoy,* 53 Barb. 407; *Rathbun v. Acker,* 18 Barb. 393.

Her appearance before the judge of probate in the manner and under the circumstances shown by the record, at the time the claimed hearing was had, neither waived her right to the notice required to be given by the statute, nor did it confer jurisdiction upon the court: *In re Whitenack,* 3 N. J. Eq. 252; *Morton v. Sims,* 64 Ga. 298–303; *Yancey v. Hankins,* 1 Ala. 171.

If Mrs. North was mentally incompetent to have the care and control of her person and the management of her property, she was incompetent to give consent to any legal proceedings, or to waive any of her legal rights relating thereto; and if she was competent, the probate court had no power to appoint a guardian for her or her estate, even though all her relatives and friends should request it, and she desire and consent to it.

The want of notice, such as we have stated, clearly rendered the whole proceeding in the probate court void. Neither was there ever any decree made by the judge of probate adjudging Mrs. North to be mentally incompetent to take care of herself and manage her property. This was necessary (*Smith v. Burlingame,* 4 Mason, 121; *Holden v. Scanlin,* 30 Vt. 177; *Chase v. Hathaway,* 14 Mass. 222; *Hovey v. Harmon,* 49 Me. 269–276; *Eslava v. Lepretre,* 21 Ala. 504); and the adjudication should appear of record (see same authorities).

It is unnecessary to review the proceedings before the probate court further.

So far as the action taken by the superintendents of the poor is concerned, and the proceedings had thereon in the circuit court, it only need be said they were evidently instigated by the same parties and from the same motives as were those for the appointment of a guardian for Mrs. North, and are void for the same reasons as are those. No such notice of their pendency in said court as is required was ever given to Mrs. North, or to her insane son, and without it they are clearly void. How. Stat. § 1742. The notice to the relatives sought to be charged with the support of this insane child is the mode by which the court acquired jurisdiction to make any order in the premises. That notice never having been given, the proceedings are a nullity : *Bloom v. Burdick*, 1 Hill, 130; *Halsey v. Hurd*, 6 McLean, 102; *Smith v. Rice*, 11 Mass. 507–512; *Merrill v. Montgomery*, 25 Mich. 75; *Palmer v. Oakley*, 2 Doug. 433 ; 3 N. J. Eq. 252.

Mrs. North made no appearance in that court; neither had Cramer any right or business to appear for her. Had the circuit judge required the records of the probate court to show his power to appear, a mere perusal of the decree would have disclosed that he had no authority to appear or to speak for Mrs. North, and that the pretended guardianship of both Gruner and Cramer was without authority and void.

The orders made in this case, and all the proceedings had in both the circuit and probate courts for the county of Washtenaw, in the premises, must be reversed, annulled, and set aside, and Mrs. North restored to the possession and control of all her property, including that of which she has been deprived under said proceedings, and all accumulations thereon which would have accrued to her had no proceedings in the case been instituted, and her estate must not be charged with any costs, charges, fees, or expenses in consequence of such proceedings.

The other Justices concurred.