SCHWANZ v. WUJEK.

1. CONTRACTS—PARENT AND CHILD—SUPPORT OF PARENT.
  No liability attaches to a son for medical services and attention rendered to his father, except by express agreement or by virtue of 2 Comp. Laws, § 4487, providing for the maintenance of indigent persons by their children, as required by the directors of the poor, and providing for the method of procedure for determining their liability.

2. Same—Question for Jury—Express Contract.

But the case should have been submitted to the jury under plaintiff's evidence, disputed by defendant's testimony, that the son promised to pay for the services.

3. Trial — Conduct of Judge — Prejudicial Instructions to Jury.

Remarks of the trial judge to the attorneys and expressions in the charge of the court showing bias or prejudice constitute reversible error.

Error to Wayne; Donovan, J. Submitted November 17, 1910. (Docket No. 24.) Decided December 7, 1910.

Assumpsit by Martin J. Schwanz against Casimir Wujek for medical services and attendance. Judgment for plaintiff. Defendant brings error. Reversed.

*William Van Dyke,* for appellant.

*C. L. Bartlett,* for appellee.

Brooke, J. Plaintiff, a surgeon and owner of a private hospital, brought suit against defendant to recover for his services in operating on defendant's father, and for the care of the patient in his hospital for some 11 weeks. For the operation plaintiff claimed $400, and for the attendance $40 per week, or about $450. He recovered a judgment for $400.

Testimony was offered by the plaintiff tending to show that, when defendant brought his father to plaintiff's hospital, he agreed to become responsible for his father's care and operation. This was denied by defendant. Upon the question of the contract, the court charged the jury as follows:

"Now, gentlemen, to make a contract with the doctor is to be as unreasonable in a case of this kind, as it would be to make a contract with a railroad company to take you as far as you wanted to go. How can they make a contract, except with a man utterly unreliable? How can you make a contract with him, how much he would be willing to take to get through? A man who would make

a contract in a case like this would be the worst kind of a judge. There could not be any contract, because they do not know how long the man will be ill, or how sick he would be, or how serious to take care of him. * * * I am perfectly willing you should consider the circumstances from beginning to end, how much would be a fair compensation, considering the sickness of the patient, the condition of the patient, and the care, and the length of time, and put it here to the plaintiff in one sum, because it is not like a promissory note, a sum fixed. They do not make a direct contract about it. It would be a sum such as the law fixes, a reasonable sum. For instance, the way you remember that homely illustration of boarding the horse; the same as caring for him, it would be just what a reasonable sum would be. The same as treating your wife; you are bound to pay for it. It would be just what that reasonable sum would be. The same as treating this man's father, from his home, where he should have been treated if at all. Where the father had placed the land, where he knew that the son was to care for him through the balance of his life, to let him down easily into the grave. That son could make the bargain, there is no doubt about it whatever. The law will imply if somebody took part of that burden, even if it was a hired man, that came in and cared for him one week, it would imply that the son would pay for it. It would imply he would pay for the hospital board. Anybody that relieved him of his obligation would be reasonably compensated."

We think that the only construction which the jury could place upon this language was that there was a common-law liability resting upon the son to reasonably provide for his father, that the contract followed as an implication of law, and that the only question to be determined by the jury was the amount which defendant should pay. We are unable to find any justification for this view of the son's obligation to his father. Undoubtedly there rested upon the son the moral obligation to care for his father so far as was consistent with his own means and station in life, but this was not a legal duty except as it became so by virtue of statutory enactment. Section 4487, 2 Comp. Laws, provides:

"The father, mother, and children, being of sufficient

ability, of any poor person who is blind, old, lame, impotent or decrepit, so as to be unable to maintain himself, shall, at their own charge, relieve and maintain such poor person, in such manner as shall be approved by the directors of the poor of the township where such poor person may be."

Sections 4488–4492 provide the method of procedure for fixing and regulating the liability of the relatives.

It is clear the liability does not attach until the statutory proceedings have been had. *North* v. *Circuit Judge*, 59 Mich. 624 (26 N. W. 810), and cases there cited; *Clinton* v. *Laning*, 61 Mich. 355 (28 N. W. 125). The court should have instructed the jury that, in order for the plaintiff to recover, they must find from the evidence that the son had contracted to become liable for the operation upon, and the care and maintenance of, the father. Under such a charge, upon this record, there was testimony tending to show such a contract, and the jury might have so found.

Many errors are assigned upon remarks made by the court to counsel for defendant during the trial. To quote these remarks and examine them at length would serve no purpose of profit to the profession. It is sufficient to say that jurors are very prone to follow the slightest indication of bias or prejudice upon the part of the trial judge. This well-known fact should always, and it usually does, so impress itself upon the mind of the court that a manifest leaning towards one side or the other is impossible. We think that the attitude of the learned circuit judge, as indicated by his remarks to counsel for defendant and by his charge, was such as to clearly prejudice defendant's rights.

The judgment is reversed, and a new trial ordered.

Bird, C. J., and McAlvay, Blair, and Stone, JJ., concurred.