*In re* PARKSIDE HOUSING PROJECT.

CITY OF DETROIT *v.* VANDENBROKER.

1. EMINENT DOMAIN—VALUE—EVIDENCE.

   In condemnation proceedings to obtain land for a housing project, exclusion from evidence of options, obtained by a housing commission which had no authority to accept or reject them, was not error, where trial court, with the acquiescence of the parties, announced the measure of damages to be the value of each parcel of land taken separately without regard to the entire property and the fact that the options were obtained by the housing commission would have no probative force as evidence of value of the separate parcels.

2. SAME—POWER OF REVIEW OF SUPREME COURT.

   Condemnation proceedings conducted pursuant to provisions of city charter are not according to the course of the common law and the Supreme Court has not the broad power of review as in the case of *nisi prius* trials according to the course of the common law (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

3. SAME—ADMISSION OF TESTIMONY—SUBSTANTIAL INJUSTICE.

   In condemnation proceedings under city charter the practice respecting admission of testimony should be as simple as a due regard to substantial justice would permit, a large discretion being left to the jury or to the attending officer, where there is one, and on appeal an award will not be disturbed unless it is fairly evident that rulings made were not only inaccurate but were a cause of substantial injustice to the appellant (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

4. SAME—FUNCTIONS OF TRIAL JUDGE.

   In condemnation proceedings under a city charter the trial judge attends the jury, decides questions of law, and administers

oaths to witnesses but functions, at most, in an advisory capacity (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

5. SAME—JURY IS JUDGE OF LAW AND FACT.

In condemnation proceedings under a city charter, the jury, according to the principles of common law, is the judge of law and fact and its conclusions need not be based entirely on the testimony, but it is expected to use its own judgment and knowledge, from a view of the premises, and its experience as freeholders, quite as much as the test of witnesses to matters of opinion (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

6. SAME—APPELLATE COURT.

While an appellate court is bound to set aside condemnation proceedings conducted pursuant to a city charter where they appear to be based on false principles, it cannot properly deal with rulings as if they were excepted to on a common-law trial, or dispose of the controversy on merely' technical notions, and should not interfere unless the errors complained of are such as may fairly be said to have a controlling influence in securing the result (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

7. SAME—COLLOQUY BETWEEN COURT AND COUNSEL—OBJECTIONS.

In condemnation proceedings under city charter, it was entirely improper during cross-examination of plaintiff's expert witness for court and corporation counsel to carry on a protracted colloquy where latter had not interposed an objection and defense counsel did not participate (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

8. SAME—FUNCTION OF JUDGE—OBJECTIONS TO EVIDENCE.

A judge, being present only in an advisory capacity in condemnation proceedings under a city charter, should avoid all unnecessary interruptions and comment and confine himself to rulings on objections to the introduction of evidence (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

9. EVIDENCE—EXPERT WITNESSES—CROSS-EXAMINATION—WEIGHT OF TESTIMONY.

Upon cross-examination of an adverse expert witness for city in condemnation proceeding conducted under a city charter, counsel for landowners has a right to ask any questions from which he might ascertain the extent of the knowledge of the witness or the manner in which he arrived at an opinion of value of the property involved (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8). ·

10. TRIAL—DISPARAGING REMARKS OF COURT AS TO COUNSEL.

Remarks of court with regard to counsel for landowners in condemnation proceedings under city charter while he was conducting a proper cross-examination of city's expert witness *held*, unjustified and of a nature calculated to disparage and prejudice him and his clients before the jury (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

11. SAME—REMARKS OF COURT AS TO COUNSEL BEFORE JURY.

It is error for the court to comment, unfavorably, in the presence of the jury, on the conduct of the trial by counsel for one of the parties, especially in view of the fact that counsel, in such a situation, is without opportunity to resent such criticism without risk to himself and injury to his clients' cause with the jury.

12. SAME—ACCUSATIONS OF UNPROFESSIONAL CONDUCT.

It is improper and prejudicial for a judge to rebuke counsel and accuse him in the presence of the jury of unprofessional conduct for asking a witness a question which is proper and which counsel has the right to ask.

13. EMINENT DOMAIN—IMPROPER REMARKS OF COURT AS TO COUNSEL BEFORE JURY.

In condemnation proceedings under city charter, statement of trial court to corporation counsel who continued re-examination of a witness, thereby giving landowners' counsel the right to further cross-examination, that "he [landowners' counsel] was through with him until you started him up. If you will let him alone he will stop. Yes, he will run down. They all run dry," *held*, improper as making landowners' counsel the subject of unjustified ridicule (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

14. TRIAL—OVERRULING UNSOUND CONTENTIONS OF COUNSEL.

Where counsel makes contentions which are not deemed sound, the trial judge should overrule them with dignity, and not use language holding counsel up to ridicule.

15. EMINENT DOMAIN—UNJUSTIFIED ASPERSIONS OF COURT TOWARD COUNSEL.

Statement by judge during trial in condemnation proceedings under city charter that he could "make another observation" as to counsel for the landowners but that "it might be a little off the record," which might lead the jury to believe, in view of what had gone before, that the court had knowledge of something which would reflect upon the character or integrity of counsel, *held,* an unjustified aspersion and innuendo (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

16. TRIAL—CONDUCT OF JUDGES.

Judges are required to exercise great care to say nothing in the hearing of jurors, while a case is progressing, which can possibly be construed to the prejudice of either party.

17. EMINENT DOMAIN—REMARKS OF JUDGE INDICATING BIAS.

Judge's statement during trial in condemnation proceedings under city charter, while corporation counsel was examining a witness, interposed in a manner suggestive of an advocate, that he was "afraid you are opening up the door for this man [counsel for landowners] to flood in," *held,* improper as indicating bias (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

18. TRIAL—JUDGES—BIAS—PREJUDICE.

It is improper for a trial judge to indicate by his remarks to counsel that he has any bias or prejudice in favor of one party or the other.

19. EMINENT DOMAIN—PREJUDICIAL CONDUCT OF TRIAL JUDGE.

Judgment in condemnation proceedings under city charter is reversed because of prejudicial conduct of trial judge where his statements before the jury implied that counsel for the landowners was guilty of misconduct, that he was trying to fool the jury, evade the ruling of the court, was guilty of impertinence, was repeatedly placing himself in danger of contempt, ridiculed and belittled defendants' claims and could

reasonably impress the jury that the judge was of the opinion that there was no merit or right in their contentions (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

20. TRIAL—ATTORNEY AN OFFICER OF THE COURT.

An attorney is an officer of the court and is entitled to respect and consideration; and while he is subject to warnings and reprimands even of a severe nature in case they are justified, he is not otherwise censurable; and judicial intimidation, derogatory remarks, ridicule, and harassment on the part of a judge during the trial of a case have no place in a court of justice.

21. EMINENT DOMAIN—PREJUDICIAL CONDUCT OF JUDGE—INSTRUCTIONS—CURING ERROR.

Prejudicial conduct of trial judge in condemnation proceedings under city charter in wrongfully accusing landowners' counsel of misconduct, of trying to fool the jury, evade the ruling of the court, of being guilty of impertinence and repeatedly placing himself in danger of contempt was not cured by judge's repeated statements to jury that he was present only in an advisory capacity, that the verdict was solely in its hands, and a fair charge to the jury further emphasizing such statements (Act No. 18, Pub. Acts 1933 [Ex. Sess.], as amended; Act No. 293, Pub. Acts 1937; Detroit Charter, title 8).

CHANDLER, J., dissenting.

Appeal from Recorder's Court; Jeffries (Edward J.), J. Submitted June 22, 1939. (Docket No. 127, Calendar No. 40,649.) Decided September 6, 1939. Rehearing denied November 9, 1939.

Condemnation proceedings by the city of Detroit to obtain land for housing projects. From verdicts, owners Victor Vandenbroker, Rose Fournier, and Charles J. Corby appeal. Reversed and new trial granted.

*Raymond J. Kelly,* Corporation Counsel, *Guy A. Moore,* Chief Assistant Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for petitioner.

*John J. Sloan* (*Ernest D. O'Brien*, of counsel), for appellants.

McAllister, J.   In proceedings under Act No. 18, Pub. Acts 1933 (Ex. Sess.), as amended by Act No. 80, Pub. Acts 1935, and Act No. 265, Pub. Acts 1937 (Comp. Laws Supp. 1935, § 2607–1 *et seq.*, Stat. Ann. § 5.3011 *et seq.*), and Act' No. 293, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 2607–51 *et seq.*, Stat. Ann. 1939 Cum. Supp. § 5.3057[1] *et seq.*), to establish the necessity for use of, and compensation to be paid for, land sought to be obtained by the city of Detroit for a housing project, property owners appeal from the verdict of the jury and judgment entered thereon.   Appellants assign two specifications of error: that the court erred in refusing to admit into evidence a so-called option between the Detroit housing commission and the owners of the land; and that appellants were denied a fair trial because of the prejudicial comments and conduct of the trial judge.

With regard to the first assignment of error above mentioned, it appears that the Detroit housing commission, an agency of the city, secured an option from the property owners to submit to the city.   The housing commission could not accept the offers in these options; such authority rested with the common council of the city of Detroit.   The commission was not empowered to pay anything for the land in question, nor to participate in the execution of conveyances in case such options were accepted by the city.   The only function of the commission was to ascertain what price property owners would agree to accept for the sale of their lands, and to bind them to sell, until such time as the city would either accept or reject such options.   The city refused the options and ordered condemnation proceedings; and on the

trial it was sought by the respondents to introduce into evidence the said options as bearing upon the value of the properties. The measure of damage and criterion of value, as announced by the trial court, was the value of each parcel of land taken separately without regard to the entire property sought to be condemned; and such rule appears to have been acquiesced in by the parties to this suit as the proper measure of damage. The mere fact that an option was secured by the housing commission, which had no authority to accept or reject, would have no probative force as evidence of the value of the properties and would not render such options admissible in evidence as bearing upon the value of the separate parcels. There was no error in excluding such options from evidence. .

The more serious question on appeal arises with regard to the alleged prejudicial conduct of the trial court. Counsel for appellants has filed numerous assignments of error with regard to such contention. It is unnecessary to discuss all of them as a consideration of the more important claims is sufficient for the purpose of our determination.

In this case condemnation was sought under the provisions of title 8 of the charter of the city of Detroit. The proceedings in question are not according to the course of the common law, and this court has not the broad power of review as in the case of *nisi prius* trials according to the course of the common law. See *City of Detroit* v. *Fidelity Realty Co.*, 213 Mich. 448. The law contemplated that the practice respecting the admission of testimony in such proceedings should be as simple as a due regard to substantial justice would permit. A large discretion is left to the jury or to the attending officer, where there is one, and on appeal an award will not be disturbed unless it is fairly evident that his rulings were not only inaccurate, but were

a cause of substantial injustice to the appellant. *Michigan Air Line Ry.* v. *Barnes,* 44 Mich. 222. The judge attends the jury, decides questions of law, and administers oaths to witnesses, but it is clear that his functions must, at most, be advisory. In all such cases, the jury, according to the principles of common law, is the judge of law and fact. Its conclusions are not based entirely on the testimony, but it is expected to use its own judgment and knowledge, from a view of the premises, and its experience as freeholders, quite as much as the test of witnesses to matters of opinion. While an appellate court is bound in such cases to set aside proceedings which appear to be based on false principles, it cannot properly deal with rulings as if they were excepted to on a common-law trial, or dispose of the controversy on merely technical notions. *Toledo, A. A. & G. T. Ry.* v. *Dunlap,* 47 Mich. 456. In such cases, reviewing courts should not interfere unless the errors complained of are such as may fairly be said to have a controlling influence in securing the result. *Fort St. Union Depot Co.* v. *Jones,* 83 Mich. 415. With the foregoing in mind, we revert to the claims made by counsel for appellants to ascertain whether there exists in the instant case such cause for reversal.

The application of the rule of damages, as above stated by the trial court, appears to have led to considerable confusion, especially during the cross-examination of the expert real estate witnesses for the city. The uncertainty in the mind of the corporation counsel and the court seems to form the background and occasion of the complaint of prejudicial conduct. It is illuminating to refer to the record in this regard, as the interruptions, questions, remarks, and alleged disparaging observations by both the court and the corporation counsel appear to have originated primarily from such confusion.

Counsel for respondents while engaged in cross-examining one of the petitioner's expert witnesses on real estate values, said:

"*Q.  (Mr. Sloan)*:   Supposing that parcel 1 were developed in accordance with your idea of its best use into a subdivision, does parcel 2 then take on any added value?"

There then followed an interruption by the corporation counsel and a colloquy with the court, in which Mr. Sloan did not participate. The court then asked to have the question repeated and, upon this being done, asked:

"*The Court:*   Subsequent?

"*Mr. Lee* (opposing counsel who was not conducting the cross-examination): Yes, assuming that parcel 1 is subdivided.

"*The Court:*   I will let him answer that. For the purpose of this lawsuit, no, but for the purpose of something else, I don't know. * * * But not for the purpose of this lawsuit. * * * Because you are either going to take it all or none of it.

"*Mr. Lee:*   And the point is this—

"*The Court:*   That is enough, that is enough. Go on. I will let it stand for that purpose.

"*Mr. Sloan:*   Will you repeat the question?

"*The Court:*   I might say here, Mr. Sloan, don't come in with any proposition of your experts on the theory that this can be sold to the city of Detroit under these proceedings as a whole, because if you do you are going to waste a lot of time."

While such a remark was not itself serious, it was a somewhat gratuitous and derogatory observation and unjustified by the conduct of counsel in question. To continue:

"*Mr. Sloan:*   I haven't even intimated what I am going to do, Your Honor.

"*The Court:* Well, I am just telling you. That is all. I might save you some time.

"*Mr. Sloan:* Will you repeat the question, Mr. Reporter?

"*The Court:* I haven't anything to do with the trial of this lawsuit now, but I have a lot to do with it when they get through with it."

No question or action of counsel justified this somewhat threatening admonition of the court.

"*Mr. Sloan:* You have a lot to do with it right now, Your Honor.

"*The Court:* No, I haven't any more to do with it than you have, or anybody else here, except to maintain discipline.

"*Mr. Sloan:* Will you repeat the question?

"(Question read by reporter.)

"*The Court:* You mean subsequent to the development?

"*Mr. Sloan:* That is the question.

"*The Court:* You may answer that.   *   *   *

"*A.* No."

There then followed another long colloquy between the court and the corporation counsel as to the meaning of the answer of the witness, together with speculations as to whether there would be an increase in value under such circumstances, and whether the court was of the same opinion as the witness. Continuing:

' " *The Court:* It wouldn't be worth any more?

"*A.* That is correct.

"*The Court: Of course that is not my idea.*

"*Mr. Lee:* No, but it is a small area out there.

"*The Court:* All right, but the unearned increment also adds to the value.

"*Mr. Lee:* Not 100 per cent."

It is difficult to see how the jury and counsel for respondents could be more bewildered than by such

confusing and irrelevant arguments carried on between the court and the corporation counsel, a procedure which was entirely improper while the witness was being cross-examined by opposing counsel without objections being interposed. Such observations and speculations were especially uncalled-for in view of the fact that the proceeding was in the nature of an inquest by the jury, and in such circumstances the judge was present only in an advisory capacity and should avoid all unnecessary interruptions and comments; and in such instances should confine himself to rulings on objections to the introduction of evidence. With confusion more confounded, the argument went on:

"*The Court:* I didn't say 100 per cent., and nobody said 100 per cent. It might be 1 per cent., or 2 per cent.; whatever its value may be. I don't think he understands the question yet, much, but I assume he does. He has had enough experience to know something about the lot of real estate, and value.

"*Q.* (*Mr. Sloan*): On the assumption that the witness does not yet understand that question, I am going to repeat it. Assuming that parcel 1 is developed according to your idea of the way it should be developed—

"*The Court:* As to the present ownership?

"*Mr. Sloan:* Yes.

"*The Court:* Regardless of ownership of the other piece of property?

"*Mr. Sloan:* That is right.

"*Q.* Does parcel 2 take on any new added value then?

"*A.* Not a particle."

Then, after another similar question, the trial court, without any objection being made by the opposing counsel, and without previous warning or reprimand, said:

"*The Court:* Of course, I don't want the jury to be misled. That is all academic. It hasn't any bear-

ing upon the parcels, because after the improvement is made in there; of course my idea is, and it is only worth, when improvements are made anywhere in the city of Detroit that it relatively has a value to all other unimproved property here in Detroit. It might be very remote and imperceptible, but it has some relation, and as it comes closer to the places of operation, why it must, at least, have some increased value, that hasn't anything to do with its value you are now trying to ascertain, and *counsel persistently undertakes to shade it in,* but I want to warn you that under the law you are to regard this as a parcel right just as it is now in its naked form, projected in the future for all of its best purposes use, and he has indicated that is for platting and selling, as he has indicated to you. It can't have any relation whatever to this other property."

If the examination had been direct examination of Mr. Sloan's witness, and he had persisted in attempting to evade a ruling of the court, or objections to his examination had theretofore been sustained, there would be some justification for the court's remarks; but this was cross-examination of an adverse witness, and counsel had the right to ask any questions from which he might ascertain the extent of the knowledge of the witness, or the manner in which he arrived at an opinion of value. The judge himself had expressed views as not being of the same opinion as the witness on various matters. The testimony certainly warranted a careful cross-examination of the witness. None of Mr. Sloan's questions which brought forth the observation of the court were objected to. He did not persist in evading any ruling of the court; and the remarks of the trial judge were unjustified.

In reply to the court's observation, counsel said:

"*Mr. Sloan:* I wish to take exception to that.

"*Q.* As a matter of fact, witness, all this land from Chandler Park south to Frankfort avenue,

with the possibility of very slight change or difference, is identical land, isn't it?

"*Mr. Lee:* Oh, no.

"*The Court:* Do you mean separate parcels?

"*Mr. Sloan:* Yes.

"*A.* No, sir.

"*Q.* Each one of those parcels is of the same value?

"*A.* No, sir.

"*Q.* To within a cent a foot of the others, isn't it?

"*Mr. Lee:* Wait.

"*The Court:* Let him learn. That is all right.

"*A.* No, sir, it is not.  *  *  *

"*Q.* The fact that separate ownership, the bare fact of separate ownership in these parcels, is what makes this worth $4,000 an acre and parcel 3 worth $1,000 an acre, is that so?

"*Mr. Lee:* Just a minute.

"*A.* No, sir.

"*The Court:* Well, that may be true, even if he said, yes. It wouldn't make any difference in the estimate of these particular parcels.

"*Mr. Lee:* That is right. Therefore it has no place in this lawsuit.

"*The Court:* Well, it has no place in this lawsuit, as such, and it won't get any place. It hasn't any place in this lawsuit.

"*Mr. Sloan:* What hasn't any place, if the court please?

"*The Court:* Any relative value based upon all ownership, single ownership, considered separate ownership, hasn't any place in this lawsuit.

"*Mr. Sloan:* I am not talking about single ownership.

"*The Court:* Yes, you are. That is all you have been devoting the last 10 or 15 minutes to.

"*Mr. Sloan:* I am talking separate ownership.

"*The Court:* You are not talking separate ownership. *Now, Sloan, you may be able to fool some but*

*you can't fool me on this.* I have been here too long.''

The court seems to have been under the impression, at the time, that Mr. Sloan was trying to prove his case by the affirmative testimony of his own witness, and appears to have completely forgotten that counsel was engaged in attacking, on cross-examination, an adverse witness. Continuing:

''*Mr. Sloan:* Just a moment, if the court please. I want to take exception not only to the court's remarks, but to the court's manner in making them. I have rights here to defend and I propose to defend them. * * *

''*The Court:* * * * *You have been persistently attempting here to evade the ruling of the court.*

''*Mr. Sloan:* I deny that flatly. I haven't been doing any such thing.

''*The Court:* All right. Go ahead.

''*Mr. Sloan:* I insist that I have a right.

''*The Court: You go ahead or I will take some action.* All right. I have a right of discipline here, understand.

''*Mr. Sloan:* I know you have.

''*The Court: Then you better go ahead and behave yourself.* * * *

''*Mr. Sloan:* I see no further use in cross-examination. * * *

''*The Court: I will tell you—let me tell you something, Sloan. You are close to the danger line.*

''*Mr. Sloan:* I don't think I am, Your Honor.

''*The Court:* Well, I think you are in your impertinence.

''*Mr. Sloan:* I haven't been guilty of any impertinence.

''*The Court:* You are certainly guilty of impertinence when you say you haven't any right of cross-examination because of the attitude of the court. You haven't any right to make that improper remark.''

Counsel had not made such a remark.

"*Mr. Sloan:* I can't see it, if the Court please.

"*The Court:* You can't see it. Well, I understand the English language.

"*Mr. Sloan:* Well, I do too.

"*The Court:* Well, let me say to you. Now just go ahead. Keep within the lines of discipline. Go ahead.

"*Mr. Pagel:* Are you through, Mr. Sloan?

"*Mr. Sloan:* I most certainly am."

We are of the opinion that counsel was not guilty of any attempt to evade the ruling of the court; that his cross-examination was entirely proper and was unduly hampered by the trial judge; and that the remarks of the court with regard to counsel were unjustified and of a nature calculated to disparage and prejudice him and his clients before the jury. It is error for the court to comment, unfavorably, in the presence of the jury, on the conduct of the trial by counsel for one of the parties, especially in view of the fact that counsel, in such a situation, is without opportunity to resent such criticism without risk to himself and injury to his clients' cause with the jury. *Christman* v. *Railway Co.*, 210 App. Div. 104 (205 N. Y. Supp. 594); 64 C. J. p. 92. It is improper and prejudicial for a judge to rebuke counsel and accuse him in the presence of the jury of unprofessional conduct, for asking a witness a question which is proper and which counsel has the right to ask. *Cooke* v. *Glassheim*, 207 App. Div. 592 (202 N. Y. Supp. 599).

On another occasion when Mr. Pagel, attorney for certain defendants, was engaged in the examination of a witness, the court in a colloquy indulged in further derogatory remarks with regard to Mr. Sloan, as follows:

"*The Court:* Now, then, of course, I don't know whether this boy is trying to sneak under the tent like my brother, Sloan."

When Mr. Sloan offered in evidence an architectural drawing showing a proposed restaurant which one of his clients had caused to be prepared some years before the trial, with a view to the possibility of having the property used for such a purpose, the court remarked: "That looks like the Kremlin."

On another occasion with reference to the same exhibit, the court said:

"Well, the purpose of this as I understand it, is to show that this property could be used for a Delmonico, or whatever you call it."

When the corporation counsel continued the re-examination of a certain witness giving Mr. Sloan the right to further cross-examination, the court stated to the corporation counsel, in referring to Mr. Sloan: "He was through with him until you started him up. If you will let him alone he will stop. Yes, he will run down. They all run dry," making Mr. Sloan the subject of unjustified ridicule. Even where counsel makes contentions which are not deemed sound, the trial judge should overrule them with dignity, and not use language holding counsel up to ridicule. *Schafer* v. *Thurston Manfg. Co.,* 48 R. I. 244 (137 Atl. 2).

In another instance the court stated before the jury to counsel: "I can make another observation, Sloan, that would be important too, and it might be a little off the record." Such a statement might lead the jury to believe, in view of what had gone before, that the court had knowledge of something which would reflect upon the character or integrity of counsel, and was an unjustified aspersion and innuendo.

Judges are required to exercise great care to say nothing in the hearing of jurors, while a case is progressing, which can possibly be construed to the prejudice of either party. *Madalinski* v. *Hill,* 277 Mich. 219.

During the examination of a witness by counsel for the city, the court interposed, in a manner suggestive of an advocate, asking the corporation counsel to question the witness in a certain way, and stating, in response to a remark by Mr. Lee: "But I am afraid you are opening up the door for this man (Mr. Sloan) to flood in." It is obviously improper for a trial judge to indicate by his remarks to counsel that he has any bias or prejudice in favor of one party or the other. *Schwanz* v. *Wujek,* 163 Mich. 492.

A review of the record satisfies us that this case should be reversed for prejudicial conduct of the trial judge. Mr. Sloan is a distinguished and outstanding attorney of the court, known and respected by bench and bar for character and integrity. The observations of the trial judge during the proceeding were of a nature likely to prejudice the case of his clients with the jury because of statements that he was guilty of misconduct, that he was trying to fool the jury, evade the ruling of the court, was guilty of impertinence, and was repeatedly placing himself in danger of contempt. The remarks further resulted in the ridicule and belittling of defendants' claims and could reasonably impress the jury that the trial judge was of the opinion that there was no merit or right in their contentions. There must be a halt to such procedure. An attorney is an officer of the court and is entitled to respect and consideration; and while he is subject to warnings and reprimands even of a severe nature in case they are justified, he is not otherwise censurable. Judicial intimidation, derogatory remarks, ridicule and har-

assment on the part of a judge during the trial of a case have no place in a court of justice.

"A large discretion is given to a trial judge in controlling the examination of the witnesses, and we dislike to criticize his methods, unless it is manifest that an injustice has been done. An attorney at law is an officer of the court, and he is part of the system devised for the trial of causes. He is entitled to such treatment from the trial judge that the interest of his client will not be prejudiced. We think the criticism of the attorney by the court was well calculated to disparage the attorney in the eyes of the jury, and was prejudicial." *Williams* v. *City of West Bay City,* 119 Mich. 395, 397.

In *Loranger* v. *Jageman,* 169 Mich. 84, it was said:

"The trial judge evidently reached the impression early in the case that plaintiff had a meritorious case, and that the defense which was interposed was without merit. This impression apparently remained with him all through the trial and affected his charge to the jury. * * * We cannot escape the conclusion that the questions of fact were not allowed to go to the jury free from the opinion of the trial judge in relation to them, and that defendant did not have a fair and impartial trial."

See, also, *Siebert* v. *Railway,* 198 Mich. 117.

We feel that there was a strong likelihood that the jury was prejudiced against defendants and their counsel because of the conduct above mentioned.

Although the trial judge repeatedly told the jury that he was present only in an advisory capacity, and that the determination of the verdict was solely in its hands, and in spite of a fair charge to the jury further emphasizing such statements at the conclusion of the hearing, we are of the opinion that the effect of his observations and conduct of the proceeding was too vitiating and prejudicial to defend-

ants' rights to be thereby corrected. In *Schwanz* v. *Wujek, supra,* it was said (p. 495):

"It is sufficient to say that jurors are very prone to follow the slightest indication of bias or prejudice upon the part of the trial judge. This well known fact should always, and it usually does, so impress itself upon the mind of the court that a manifest leaning towards one side or the other is impossible. We think that the attitude of the learned circuit judge, as indicated by his remarks to counsel for defendant, and by his charge, was such as clearly to prejudice defendant's rights."

In such a proceeding for the condemnation of land for a broad public purpose in the interest of the general welfare of the community, it is regrettable that this case must be sent back for retrial with the attendant delay resulting therefrom. But it would be more regrettable if citizens were denied a fair trial and an adjudication of their rights, thereby suffering property losses through prejudice and disparagement in our courts. The judgment is reversed and a new trial granted, with costs to defendants.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, and NORTH, JJ., concurred with McALLISTER, J.

CHANDLER, J. (*dissenting*). I am for affirmance of this case for the reason that I think the award made by the jury is ample. If the record justifies this conclusion, the errors complained of, being claimed prejudicial remarks of the presiding judge, should be disregarded because the jury certainly was not influenced thereby.

The awards were considerably in excess of the values placed on the property by petitioner's expert witnesses and considerably below the values testified to by the expert witness offered by respondents.

The charge of the presiding judge was eminently fair to all parties, was clear and comprehensive, and the jury was given to understand that they were the sole judges of the law and the facts, and that they should disregard any controversies between court and counsel. The award indicates that the jury followed these instructions, and after deliberating five days awarded respondents ample compensation as shown by the record.

Award should be affirmed, with costs to petitioner.