133 Mich. App. 1 (1984)
349 N.W.2d 247
In re WILLIAMS ESTATE
SMITH
v.
WITHERSPOON
Docket No. 67519.
Michigan Court of Appeals.
Decided March 20, 1984.
Haines & Marti (by John A. Haines, Jr.), for petitioner.
Robert L. Kaczmarek, Prosecuting Attorney, and Terry L. Clark, Assistant Prosecuting Attorney, for respondent.
Before: J.H. GILLIS, P.J., and SHEPHERD and J.J. KELLEY,[*] JJ.
SHEPHERD, J.
Appellant, Lori Ann Smith, appeals *3 from the Saginaw County Probate Court's denial of her petition for removal of respondent as guardian of the person and conservator of the estate of Ramon R. Williams, a legally incapacitated person.
On January 27, 1969, Ramon R. Williams was struck on the head with a blunt instrument. He suffered a subdural hematoma, resulting in serious brain damage and continuous hospitalization since that time. Ramon currently resides in the Veterans Administration Medical Center in Battle Creek. On September 16, 1970, Donna N. Williams, Ramon's mother, petitioned the Saginaw County Probate Court for appointment of herself as guardian of the person and estate of Ramon Williams. The petition indicated that Ramon's only other next of kin was Lori Ann Williams, Ramon's seven-year-old daughter. On October 9, 1970, Donna Williams was appointed guardian of the person and estate of Ramon Williams. On November 15, 1972, Donna Williams filed her final account and prayed that she be discharged because of failing health. On February 16, 1973, an order was entered appointing Robert E. Stark as guardian of the person and estate. On August 31, 1976, Robert E. Bright was appointed successor guardian of the person and estate. On February 18, 1981, Robert E. Bright filed his fifth and final account and prayed that he be discharged because he had been elected to judicial office. On March 5, 1981, the probate court appointed respondent, Juanita Witherspoon, guardian of the person and conservator of the estate of Ramon R. Williams. On July 9, 1981, Lori Ann (Williams) Smith, having turned 18 years of age on February 9, 1981, petitioned the court for the removal of Juanita Witherspoon. Petitioner requested that Thomas R. Koopman be appointed as successor guardian of the person and *4 conservator of the estate as her nominee. Judith A. Nagy, Ramon's sister-in-law, was appointed guardian ad litem to represent the interests of Ramon R. Williams. The hearing was held on September 17, 1981.
At the hearing, Juanita Witherspoon, Saginaw County Public Guardian, testified that she was the current guardian of the person and conservator of the estate of Ramon Williams. Ms. Witherspoon testified that no hearing was held at the time of her appointment. Rather, she received notice from the now Judge Bright that she had been appointed guardian and conservator. Ms. Witherspoon sent a letter to Ms. Smith on May 26, 1981, to inform her that she had been appointed guardian and conservator. Ms. Witherspoon received no response from Ms. Smith.
On August 26, 1981, Ms. Witherspoon visited Ramon at the Veterans Administration Hospital in Battle Creek. She testified as to the condition of the ward:
"Presently Ramon is confined to a bed in that the capacity in which he is confined to the bed is that he does have to lie flat on his back at all times. He has slight to no vision at all. And the way it is described at the V.A. Medical Center in Battle Creek is that his vision is blurred. So, he can see somewhat, but very little. He is brain-damaged, I guess, as a result of an automobile accident. He can talk, but in a very slurred manner. If you get close enough to him, you can understand what he is saying."
On the day of her visit, Ramon's social worker informed Ramon that Ms. Witherspoon had been appointed guardian of his person and conservator of his estate. Witherspoon testified that Ramon indicated that he did not mind having her serve in that capacity.
*5 Witherspoon also testified that, although Ramon has no real property, his estate is valued in excess of $50,000, which she has invested with various financial institutions, including the County Trust and Agency Account. She also testified that she has worked with various agencies, the Veterans Administration, an attorney, and Ramon's social worker. Witherspoon indicated that one reason she did not believe she should be removed from the position of guardian and conservator is that there was a great deal of work involved in changing the ward's accounts to reflect her appointment, approximately three hours, and she did not feel that Ramon's estate should bear the added expense of duplicating her efforts.
Lori Ann Smith testified that her mother was divorced from Ramon before he was institutionalized. Although not adopted, she had taken her stepfather's name in order to be part of the family. Ms. Smith received no notice of a hearing for the appointment of Witherspoon as her father's guardian and conservator of his estate. Rather, Robert Bright sent her a letter on March 11, 1981, informing her of the appointment. Ms. Smith testified that, until she turned 18, the hospital would not allow her to visit her father. Since turning 18 in February, 1981, she had visited her father once on Labor Day. Ms. Smith stated that she had not been kept well informed of her father's condition by any of the earlier guardians or by Ms. Witherspoon. She was not informed of his leg's being amputated until three to four months after the operation. She learned of his temporary transfer to Traverse City a year after the transfer. Ms. Smith testified that she preferred to be more informed and wished to have her attorney, Thomas Koopman, appointed as guardian and conservator in *6 her stead because he could handle all of the legal matters. However, she felt that at her age and status she was ready and capable of accepting the responsibility of the management of her father's affairs.

I. Did the probate court have jurisdiction to appoint respondent to serve as successor guardian and conservator?

The notice provision of MCL 700.451; MSA 27.5451 provides in part:
"Sec. 451. (1) In a proceeding for the appointment or removal of a guardian of a legally incapacitated person other than the appointment of a temporary guardian or temporary suspension of a guardian, notice of hearing shall be given to each of the following:
"(a) The ward or the person alleged to be legally incapacitated and that person's spouse, parents, and adult children.

* * *
"(2) Notice shall be served personally on the alleged legally incapacitated person and that person's spouse and parents, if they can be found within this state. Notice to the spouse and parents, if they cannot be found within this state, and to all other persons except the alleged incapacitated person, shall be given as prescribed by court rule. Waiver of notice by the person alleged to be incapacitated is not effective unless the person attends the hearing or a waiver of notice is confirmed in an interview with the visitor." (Emphasis added.)
Relying on North v Joslin, 59 Mich 624; 26 NW 810 (1886), petitioner claims that the probate court's appointment of a successor guardian and conservator is void for lack of jurisdiction. In North, the Court held that the probate court was *7 without jurisdiction to adjudicate a person insane and appoint a guardian where the alleged incompetent was not given notice of hearing. 59 Mich 647. The Court stated that "the probate court derives its jurisdiction to appoint guardians for insane and incompetent persons entirely from the statute * * * and in order to obtain jurisdiction in such cases the provisions of the statute must be strictly pursued". North, p 646. Respondent argues that MCL 700.451(2); MSA 27.5451(2) only requires that notice be served personally on the alleged legally incapacitated person, that person's spouse, and parents. However, MCL 700.451(1)(a); MSA 24.5451(1)(a) requires that notice of hearing be given to adult children. Petitioner was never served, personally or otherwise, with any notice of hearing. Rather, she received notice of appointment. In Stevens v Stevens, 266 Mich 446, 449; 254 NW 162 (1934), the Court relied on North to hold that the probate court was without jurisdiction to order a guardian appointed where there was no notice to the next of kin. On the basis of North and Stevens, the respondent's argument is not persuasive.
Respondent also argues that any error was harmless because petitioner subsequently challenged her appointment in the present action. Petitioner argues that she was indeed prejudiced since she was required to prove good cause for removal, MCL 700.475; MSA 27.5475, rather than merely asserting her priority under MCL 700.454; MSA 27.5454 and MCL 700.470; MSA 27.5470. Petitioner further argues that respondent, as public guardian, has no priority to serve as guardian of the ward and conservator of his estate. Petitioner asserts that the recognition by the court of a public guardian is an unconstitutional expansion *8 of the power of the County Public Administrator (see infra, Issue II).
We first hold that the failure to give petitioner notice was jurisdictional and cannot be considered harmless. Since petitioner had to challenge the appointment after the fact, she was placed under an onerous burden of proof. It was necessary for petitioner to convince the court of her right to priority and also of respondent's lack of priority. The fact that the probate court never stated that it was using the "good cause" standard does not change the fact that petitioner had to convince the probate court that she was more qualified to serve as her father's guardian and conservator of his estate.
II. Did the probate court correctly deny petitioner's application for removal of respondent and appointment of petitioner's nominee for successor guardian and conservator?
Petitioner sought to have the probate court appoint her nominee, Thomas Koopman, her attorney, conservator of the estate and guardian of the ward. The Probate Code treats conservatorships and guardianships separately.
GUARDIANSHIPS
MCL 700.454; MSA 27.5454 relates to the appointment of guardians and provides:
"Sec. 454. (1) Any competent person may be appointed guardian of a legally incapacitated person.
"(2) In appointing a guardian under this section, the court shall appoint a person, if suitable and willing to serve, designated by the person who is the subject of the petition.
"(3) If a person is not designated under subsection (2) or a person designated under subsection (2) is not *9 suitable or willing to serve, the court may appoint as a guardian a person who is related to the subject of the petition, in the following order of preference:
"(a) The spouse of the legally incapacitated person, including a person nominated by will or other writing signed by a deceased spouse.
"(b) An adult child of the legally incapacitated person.
"(c) A parent of the legally incapacitated person, including a person nominated by will or other writing signed by a deceased parent.
"(d) A relative of the legally incapacitated person with whom the person has resided for more than 6 months before the filing of the petition.
"(e) A person nominated by the person who is caring for the person or paying benefits to the person.
"(4) If none of the persons listed in subsection (3) is suitable or willing to serve, the court may appoint any competent person who is suitable and willing to serve." (Emphasis added.)
CONSERVATORSHIPS
MCL 700.470; MSA 27.5470 designates the priorities to be recognized by the probate court in appointing a conservator:
"Sec. 470. (1) The court may appoint an individual, or a corporation with general power to serve as trustee, as conservator of the estate of a protected person. The following are entitled to consideration for appointment in the order listed:
"(a) A conservator, guardian of property, or other like fiduciary appointed or recognized by the appropriate court of another jurisdiction in which the protected person resides.
"(b) An individual or corporation nominated by the protected person if the person is 14 years of age or older and, in the opinion of the court, has sufficient mental capacity to make an intelligent choice.
"(c) The spouse of the protected person.
*10 "(d) An adult child of the protected person.
"(e) A parent of the protected person, or a person nominated by the will of a deceased parent.
"(f) A relative of the protected person with whom the person has resided for more than 6 months before the filing of the petition.
"(g) A person nominated by the person who is caring for the protected person or paying benefits to the protected person.
"(h) Any other person determined by the court to be suitable and qualified.
"(2) A person in a priority pursuant to subdivisions (a) or (c) to (f) may nominate in writing a person to serve in the person's stead. With respect to persons having equal priority, the court shall select the person best qualified of those willing to serve. The court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." (Emphasis added.)
The probate court found that petitioner (an adult child of the protected person) had not demonstrated her right to assert her statutory priority:
"It is clear from reading these statutes that the Legislature intended the courts to use some discretion in making these appointments. It is equally clear in listing these priorities that the Legislature contemplated a close relationship between the subject of a petition and a fiduciary to be appointed. In the instant case that relationship is in name only  father to child. In fact, the daughter doesn't use her father's name, but that of her stepfather. They are virtual strangers to each other. The daughter's first reaction on being informed of Mrs. Witherspoon's appointments was not to inquire as to the welfare of her father, but to take the letter to an attorney. Emphasis seems to be primarily on her father's estate and not his personal well-being. Miss Smith indicates that she wants to `be involved in her father's management'. As his daughter she now has a golden opportunity to demonstrate her concern for his care and well-being. She doesn't need an attorney *11 guardian/conservator to assist her in a father/child relationship. When she can demonstrate that such a filial relationship exists, she may take advantage of her statutory priority. Meanwhile, until such a relationship develops, I don't believe she is entitled to the priority enumerated in the statutes and it would be in the best interest of Ramon R. Williams for Juanita Witherspoon to remain as his guardian and the conservator of his estate."
It is clear from the statutory wording that the selection of the person to be appointed guardian and conservator is a matter which is committed largely to the discretion of the probate court. Therefore, the abuse of discretion standard is applicable on review. See In re Stockman, 71 Mich 180, 191; 38 NW 876 (1888); 65 ALR3d 991, § 2, p 995.
As a general rule, relatives of the ward are preferred, but the best interests of the ward are the paramount considerations when a guardian is selected. Stockman, supra, p 191; 65 ALR3d 995. In the instant case, petitioner qualifies to be appointed as conservator under § 470(1)(d) as the "adult child of the protected person". Under § 470(2), she has the right to nominate a person to serve in her stead. Respondent also qualifies, presumably under § 470(1)(h), as "[a]ny other person determined by the court to be suitable and qualified". Although petitioner has priority, § 470(2) clearly gives the court the authority, for good cause, to pass over "a person having priority and appoint a person having less priority or no priority". The probate court's reason for passing over petitioner is that she has not demonstrated a "filial relationship" in that she does not use her father's name. She had only visited her father once, and they were "virtual strangers to each other". It is this Court's opinion that this does not *12 amount to good cause. Petitioner did not use her father's name because her mother had remarried and her father was hospitalized since she was seven years old. It is not uncommon for young children to take the names of their stepparents in order to promote family-like relationships. Petitioner and her father obviously would remain "virtual strangers" since the hospital refused her visitation until she reached age 18. In this regard, it should be noted that respondent and Ramon are also "virtual strangers" and respondent has visited Ramon only once.
Petitioner also qualifies under § 454(3)(b) to be appointed guardian of her father. Respondent's status is not given preference at all under § 454. However, § 454(4) gives the court authority to appoint any competent person who is suitable and willing to serve, if none of the persons given preference are suitable. Again, the trial court's reason for finding petitioner not suitable was that she had not demonstrated a "filial relationship" with her father. As previously noted, this does not amount to an appropriate finding of nonsuitability. Petitioner also sought to have her attorney nominated to serve in her stead as guardian. Section 454 does not have a nomination provision similar to § 470. Rather, § 454(3)(e) only allows nomination by the person who is caring for the ward or paying benefits to the ward. This conflict could have been solved by the probate court by appointing petitioner as the guardian of her father and allowing petitioner to nominate her attorney as the conservator of the estate of her father.
Petitioner argues that respondent, as public guardian, has no standing to serve as successor guardian and conservator because there is no enabling legislation creating the Office of Public *13 Guardian. The probate court found that respondent was appointed and is serving in her individual capacity. The standard of review in cases where the probate court sits without a jury is whether the court's findings are clearly erroneous. In In re Wojan Estate, 126 Mich App 50; 337 NW2d 308 (1983); GCR 1963, 810. The probate court's finding that respondent is serving in her individual capacity is not clearly erroneous and we are therefore not obliged to rule upon whether the probate court had the authority to create the office of "public guardian".
Respondent argues that petitioner did not show good cause for removal, as is required by MCL 700.475; MSA 27.5475. As discussed previously, we do not believe that petitioner should be required to show good cause because she was not given notice until respondent was already appointed. However, it also appears that petitioner sufficiently demonstrated good cause for the removal of respondent. Petitioner is the adult child and sole heir of the ward and has indicated her desire to assume the responsibility for his affairs. She testified that she had never been kept well informed of her father's condition. She demonstrated that she was a person granted statutory priority under the Revised Probate Code. Upon reaching her age of majority, she followed the proper procedures to assume responsibility for the care of her father. Therefore, it is this Court's opinion that the probate court abused its discretion by denying petitioner's requested relief.
CONCLUSION
Petitioner did not receive notice of hearing as required by MCL 700.451; MSA 27.5451. Consequently, the probate court's appointment of respondent *14 is void for lack of jurisdiction. For the reasons stated herein, this case is remanded to the probate court for entry of an order appointing petitioner guardian of her father's person and for an order allowing appointment of petitioner's attorney as conservator of her father's estate. We believe that the interests of Ramon R. Williams will be adequately protected by the probate court in setting an appropriate bond, by the appointment of the attorney as conservator and by the continuing supervision that is given to all estates by the probate court.
No costs.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.