# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of Jeanette Peace.

KATHY CROWDER,

Petitioner-Appellant,

v

VERONICA DONALDSON,

Respondent-Appellee,

and

NANCY[1] BARUZZINI and JACK
DONALDSON,

Intervenors.

UNPUBLISHED
March 10, 2016

No. 324655
Oakland Probate Court
LC No. 2013-353264-DA

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Petitioner Kathy Crowder appeals by right the trial court's order finding the will executed by the decedent, Jeanette Peace, on April 21, 2008, valid. We affirm.

Jeanette Peace was born on October 9, 1944, and died of natural causes on August 7, 2013, at the age of 68. She had two daughters, petitioner Kathy Crowder and intervenor Nancy Baruzzini; and a brother, intervenor Jack Donaldson, who is the husband of respondent Veronica Donaldson.[2] Veronica is, therefore, Jeanette's sister-in-law. The will at issue specifically and explicitly disinherited Nancy and Kathy, and it appointed Veronica as her personal representative and Jack as backup personal representative. The will left the entirety of Jeanette's estate to

---

[1] Also spelled "Nanci" in various places in the record.

[2] For ease of reference, we will refer to the parties by their given names.

-1-

Veronica and Jack. Jeanette had been diagnosed with Alzheimer's dementia at the age of 60. Kathy argues, generally, that by April of 2008, Jeanette's mental state had deteriorated to the point where she lacked testamentary capacity, or, alternatively, that the 2008 will and another will executed in 2007 had been the products of undue influence by Veronica and Jack.

We review for clear error the probate court's findings of fact when it sits without a jury. *In re Estate of Williams*, 133 Mich App 1, 13; 349 NW2d 247 (1984). The probate court's ultimate dispositional rulings are reviewed for an abuse of discretion. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). We review the legal conclusions drawn by a trial court de novo. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). We give great deference to the trial court's assessment of witness credibility. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881).

Kathy's argument that Jeanette lacked testamentary capacity relies largely on Jeanette's increasing need for notes and reminders around her house to help her keep track of the requirements of daily life, Jeanette's inability to learn the names of the triplets Kathy had during the general time period of the 2008 will, and of course Jeanette's Alzheimer's diagnosis. Kathy also notes that the Donaldsons described Jeanette as suffering from psychological issues and confusion shortly before the 2008 will was drafted. Furthermore, they were the ones who discovered that a large amount of money was allegedly missing from Jeanette's account, which prompted Jeanette to conclude that her daughters were stealing from her.

The trial court gave significant credence to three impartial and neutral witnesses who testified: LaRue Davis, the lawyer who drafted Jeanette's will; Gregory Mlynarek, the lawyer who served as Jeanette's guardian ad litem during a guardianship proceeding; and Dr. K. C. Radhakrishnan Nair, the psychiatrist who treated Jeanette for a number of years, including the year she executed the 2008 will. Davis had no personal recollection of Jeanette but kept notes about her and testified about his procedures for interviewing clients and verifying their mental capacity and independence. All three indicated that Jeanette expressed some kind of disappointment in her daughters, Mlynarek and Nair specifically noted Kathy and Nancy's alleged financial exploitation. All of them indicated in one way or another that Jeanette appeared to be acting of her own volition, that the Donaldsons were helping but not controlling, and that they were not concerned that Jeanette's declining mental state had deprived her of the ability to know who her daughters were or what she owned. Indeed, their testimony indicated precisely the opposite. Furthermore, Kathy and Nancy both testified that they remained close to Jeanette despite the allegations of financial misappropriation.

The degree of mental impairment necessary to invalidate a will is well beyond merely being forgetful or having some mental infirmity. *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW 436 (1953). The trial court correctly identified the burden of proving a lack of testamentary capacity as being on Kathy. We simply cannot find any error in the trial court's conclusion that Kathy failed to meet that burden of proof: a lack of testamentary capacity simply requires more psychological infirmity than was proven.

Kathy additionally states, correctly, that a presumption of undue influence arises if the grantor and grantee are in a confidential or fiduciary relationship, the confidant or fiduciary benefitted from the transaction, and the confidant or fiduciary had the means and opportunity to

-2-

exert influence on the grantor. *Bill and Dena Brown Trust ex rel Brown v Garcia*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 322401, slip op at 8). The presumption will satisfy a will opponent's burden of persuasion, but only in the absence of sufficient rebuttal evidence; that is, the presumption is permissive and rebuttable, and it does not shift the ultimate burden of proof. *Id*. at ___ (slip op at 8-10). She asserts that she established the elements of that presumption and that Veronica failed to overcome it. We disagree. The party alleging undue influence remains obligated to establish affirmative proof that some manner of *actual* coercion was *actually* brought to bear on the grantor. *Id*. at ___ (slip op at 8). Motive, opportunity, and capacity to exercise improper influence do not themselves prove the exercise thereof. *Id*.

Giving Kathy the benefit of the doubt as to whether she did, in fact, present proofs sufficient to establish the presumption, we disagree that Veronica failed to present sufficient rebuttal evidence. As noted, all three of the neutral witnesses, each of whom had some expertise in assessing the mental state of their clients, indicated, either through direct recollection or the implications derived from their notes and procedures, that while the Donaldsons may have been present in Jeanette's life and she may have been suffering some mental decline, she continued to operate under her own volition. More directly, the relevant portion of the 2008 will—the disinheritance of Kathy and Nancy—was consistently described as being due to Jeanette's belief that her daughters had stolen from her. As discussed previously, this Court generally does not second-guess the trial court's credibility assessments, upon which it appears to have relied.

Kathy failed to provide any affirmative evidence beyond possibly satisfying the prerequisites of the presumption, which we conclude that the trial court properly found rebutted. The trial court therefore properly found that Kathy failed to meet her burden of proving undue influence.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens

-3-