# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CONSERVATORSHIP OF JANET KAPP.

---

MILA KAPUSTA and BONNIE PENTA,

      Appellants,

v

THOMAS FRASER BRENNAN, Successor
Conservator, and LORRIE KAPP,

      Appellees.

UNPUBLISHED
January 4, 2018

No.  338010
Oakland Probate Court
LC No.  2016-373275-CA

---

*In re* GUARDIANSHIP OF JANET KAPP.

---

MILA KAPUSTA and BONNIE PENTA,

      Appellants,

v

THOMAS FRASER BRENNAN, Successor
Guardian, and LORRIE KAPP,

      Appellees.

No.  338011
Oakland Probate Court
LC No.  2009-326971-GA

---

*In re* GUARDIANSHIP OF MILAN KAPP.

---

MILA KAPUSTA and BONNIE PENTA,

      Appellants,

v

No.  338013
Oakland Probate Court
LC No.  2016-373276-GA

-1-

THOMAS FRASER BRENNAN, Successor
Guardian, and LORRIE KAPP,

      Appellees.

_____

*In re* CONSERVATORSHIP OF MILAN KAPP.

_____

MILA KAPUSTA and BONNIE PENTA,

      Appellants,

v

THOMAS FRASER BRENNAN, Successor
Conservator, and LORRIE KAPP,

      Appellees.

_____

No.  338015
Oakland Probate Court
LC No.  2016-373277-CA

Before:  GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

This matter concerns four consolidated appeals[1] arising out of guardianship and conservatorship proceedings for Janet Kapp (Janet) and Milan Kapp (Milan), an elderly married couple.  All four appeals challenge essentially identical orders entered in each underlying case by the probate court.  These orders denied petitions filed by appellants, Mila Kapusta (Mila) and Bonnie Penta (Bonnie), and appointed a successor public administrator, appellee Thomas B. Fraser, as guardian and conservator in the four cases.  Finding no errors warranting relief, we affirm.

## I.  FACTS

Janet and Milan Kapp are in their mid-nineties and live together in their own home.  They have four adult daughters, being appellants Mila and Bonnie, appellee Lorrie Kapp (Lorrie), and Sandy Kapp (Sandy).  These daughters have seemingly divided themselves into two factions, with Mila and Bonnie pitted against Lorrie and Sandy, regarding the care of their parents and the management of their parents' finances.

---

[1] *In re Conservatorship of Janet Kapp*, unpublished order of the Court of Appeals, entered May 17, 2017 (Docket No. 338010).

In June 2016, Janet and Milan executed various legal documents regarding the management of their affairs with the assistance of an attorney. The meeting with the attorney apparently had been arranged by Lorrie. Janet and Milan both granted Lorrie durable power of attorney over medical decisions, appointed Lorrie as their patient advocate, and also granted her general power of attorney. The attorney informed Mila, Sandy, and Lorrie by letter of the estate plan at the request of Janet and Milan. The letter explained that Janet and Milan's objectives were to stay in their own home, qualify and obtain Veteran's benefits if possible, and to place in trust $50,000 that allegedly had been removed from their accounts and was being held by Mila on their behalf.

After being advised of the estate plan, Mila and Bonnie filed four petitions in the probate court. The first petition sought the appointment of a guardian for Janet, asserting that Janet suffered mental illness, mental deficiency, and physical illness or disability. The petition asked the probate court to appoint Mila and Bonnie as co-guardians. The second petition requested that Mila and Bonnie be appointed as co-conservators for Janet's estate, alleging that Janet was mentally and physically unable to manage her own affairs. The third and fourth petitions requested that Mila and Bonnie be appointed co-guardians and co-conservators for Milan, essentially making the same allegations as those stated in the petitions related to Janet. Lorrie filed objections to the petitions, asserting that she had been the primary caregiver for Janet and Milan since 2008, and asserting that the appointment of a guardian or conservator was unnecessary in light of the provisions for their care made through the execution of the estate plan.

The probate court appointed Kathleen M. Parakh as guardian ad litem for both Janet and Milan, and directed her to file a report regarding all four petitions. Parakh thereafter reported regarding Janet's guardianship case, in relevant part:

> Janet is 92 years old and has 4 grown children. Per her medical documents, Janet has been diagnosed to suffer from congestive heart failure, had four mini strokes in the last year that caused diminished eye sight, and walking issues. Janet is also diagnosed to suffer from memory loss. I am informed Lorrie stays with her most days and nights and a nurse comes in for 5.5 hrs a day to assist with Janet and her husband's care.

> I explained [to] Janet her rights and when asked if she understood, she stated she did not want any changes. Regardless of any question I asked Janet, her only answer was she did not want anything to change. Janet did not respond to some of my questions and did not communicate that she understood anything. Her speech was poor and in some cases [she was] unable to speak. Janet is reported to receive Soc. Sec. benefits of $677.00 /month. Janet owns the condo she lives in along with her husband. All her children express great concern for her and admit there is a lot of fighting between them that has affected her health. I was also informed that fighting between her daughters has caused problems at treatment centers. There are accusations of undue influence and poor treatment of her from all her daughters.

In Janet's conservatorship case, Parakh's report was largely identical. Parakh additionally explained:

> Earlier this year the pensions and SSI went into . . . a savings account where Mila helped on the account and Lorrie then paid the bills from their checking account. However, that system broke down due to fighting and accusation of funds [mismanagement] on both sides of the children. Lorrie is now in control of all funds and is paying all bills. There are claims of funds [mismanagement] from both petitioners and other daughters.

Regarding Milan's guardianship case, Parakh wrote:

> Milan is 93 years old, he has 4 grown children. Medical records indicate he suffers from dementia that was diagnosed over 6 years ago along with type 2 diabetes. His daughter Lorrie, stays with him most days, and nights. I was informed a nurse comes in every day for about 5.5 hrs, to assist with him and his wife's care.
>
> I explained Milan's rights to him and he stated that he understood them. However, Milan indicated to me that his wife Janet sitting next to him was a young boy. He could not recollect his children's names nor their approximate ages. When trying to explain what a guardianship is, Milan [kept] mentioning about baseball. During our talk, Milan could not answer simple questions about himself or his environment. . . . Milan has not seen his other daughters since August. Milan's patient care contract with Lorrie states he will see his family members and have socialization. I observed extensive family fighting on funds, treatment of parents, and who will control the parents. This is causing isolation for the parents.

In Milan's conservatorship case, Parakh's report was largely identical with Parakh also writing:

> I was informed Milan receives Social Security and Pension benefits which is roughly . . . $3,800.00 a month. I was also informed Milan owns his condo along with his wife and owns a car. Earlier this year, the pensions and SSI went into . . . a savings with Mila on the account and Lorrie paid the bills from their checking account. However, that system broke down . . . due to fighting and accusation of funds [mismanagement] from both daughters. Lorrie, in April of this year, with her parents tried to setup [sic] a Trust for their care, but it is not set up. There is a[n] application for VA benefits, but it is not complete. Milan [executed] a patient care agreement with Lorrie in July, where he pay[s] her $1500.00/month for her services to assist him i[n] financial matters.

Parakh recommended court-appointed guardianships and conservatorships in the four cases, and also recommended court-ordered mediation.

The probate court thereafter held a hearing during which Parakh repeated her observations and recommended the appointment of a guardian and conservator. Regarding the estate planning documents, Parakh questioned whether either Janet or Milan had the mental

capacity to understand those documents when they were executed. In addition, Mila testified that Janet and Milan could not care for themselves or their financial affairs. At the conclusion of the hearing, the probate court appointed public administrator Barbara Andruccioli as guardian and conservator of Janet and Milan. The probate court also directed the parties to meet and establish a visitation schedule in light of Mila's assertions that Lorrie and Sandy, who regularly stayed with the parents, would not permit Mila and Bonnie to visit. When the parties could not agree, the probate court imposed a visitation schedule. The probate court then ordered the parties to participate in facilitation, and ordered Andruccioli to obtain financial statements and to investigate the matter of the $50,000 that allegedly had been withdrawn from Janet's and Milan's account and placed in an account owned by Mila. The probate court further directed Andruccioli to have a geriatric evaluation performed to assess the home and care situation, and to make recommendations.

Thereafter, Mila and Bonnie filed a number of petitions, asking the probate court to terminate certain health care contracts, alleging that Lorrie and Sandy, as well as Homestead Home Health Care, were not providing adequate care for Janet and Milan, and asking the probate court to hold Lorrie and Sandy in contempt for allegedly interfering with Mila's and Bonnie's visits with Janet and Milan. Mila also filed petitions asking the probate court to remove Andruccioli as Janet's and Milan's conservator and guardian.

The probate court held a hearing regarding the petitions, during which the court again explained that many of the issues raised in the various petitions were to be addressed first in facilitation, which the parties had failed to attend due to disagreements. The probate court determined that the petitions therefore were premature, denied all of the petitions without prejudice, and again directed the parties to attend facilitation.

Mila and Bonnie thereafter filed the petitions that are at issue in this appeal. In the first petition, Mila and Bonnie sought an evidentiary hearing on the issue of whether Janet and Milan were receiving adequate care. The second petition was termed a "supplement" to the petition seeking to hold Lorrie and Sandy in contempt, and requested additional visitation in light of Janet's alleged worsening physical condition. Mila and Bonnie also filed "supplements" to other earlier-filed petitions, requesting that Andruccioli be replaced as guardian and conservator, and that she be replaced by either Mila, Bonnie, or one of two public administrators whom they specified.

The probate court held a hearing on the petitions, at which the probate court stated:

Okay. I have read all of the pleadings, the original petitions or motions, the responses and so on, and I'm gonna decide this without oral argument. And what I'm gonna do is, I am denying the – what is it, a petition for an evidentiary hearing and petition to hold Lorrie and Sandy Kapp in contempt, I'm denying both of those. And I'm denying your request for sanctions from the opposite parties, and last but not least, Ms. Andruccioli wants to resign.

The probate court then accepted Andruccioli's resignation, and appointed a different public administrator, Thomas Fraser, in her place. The court explained:

I find that this case continues to be a very – a lot of hostility between the two sides of the family and they are interfering with the public administrator's ability to care for Milan and Janet Kapp to the extent that, of all people, Barb Andruccioli just has to leave. She's under attack, apparently, constantly, and from what I've seen, that's true.

* * *

. . . I believe . . . that there was not a person in the family for reasons stated within Ms. Andruccioli's response, and for reasons that are apparent from reading the response – the petitions and responses from both sides, and from the history of this case it is clear to me that there is no one in priority who is suitable to serve as guardian so I must, pursuant to statute, go outside of priority and appoint a professional guardian and I am choosing Mr. Fraser.

The attorney representing Mila and Bonnie stated that he "appreciate[d] that" and agreed to prepare an order. The probate court thereafter entered orders permitting Andruccioli to resign as guardian and conservator in each case, appointing Fraser as successor guardian and conservator, and denying both petitions. This appeal followed.

II.  DISCUSSION

A.  APPOINTMENT OF FRASER

Mila and Bonnie first contend that the trial court abused its discretion by appointing Fraser as successor guardian and conservator without first holding an evidentiary hearing to determine whether either Mila or Bonnie is suitable to serve in those roles. Mila and Bonnie argue that, pursuant to MCL 700.5106, MCL 700.5313, and MCL 700.5409, the trial court was required to give priority to Mila and Bonnie when selecting a guardian and conservator, and was required to hold an evidentiary hearing on the issue. We disagree.

First, this issue is unpreserved. Mila and Bonnie did not raise before the probate court the question of statutory priority in appointing the guardian and conservator. Because the issue was not raised before the trial court, it is unpreserved. See *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015). We review unpreserved issues for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id.* at 328-329 (quotation marks and citations omitted). A plain error affects substantial rights if it affects the outcome of the lower court proceedings. See *Richard v Schneiderman & Sherman, PC (On Remand)*, 297 Mich App 271, 273; 824 NW2d 573 (2012).

Second, Mila and Bonnie waived this issue by acquiescing in the probate court's appointment of the successor guardian. MCL 700.5106(1) generally permits a probate court to appoint a professional guardian or conservator when appropriate. However, MCL 700.5106(2) states the following:

(2) The court shall only appoint a professional guardian or professional conservator as authorized under subsection (1) if the court finds on the record all of the following:

(a) The appointment of the professional guardian or professional conservator is in the ward's, developmentally disabled individual's, incapacitated individual's, or protected individual's best interests.

(b) There is no other person that is competent, suitable, and willing to serve in that fiduciary capacity in accordance with section 5212, 5313, or 5409.

With respect to the appointment of guardians, MCL 700.5313 provides, in relevant part:

(1) The court may appoint a competent person as guardian of a legally incapacitated individual. . . .

(2) In appointing a guardian under this section, the court shall appoint a person, if suitable and willing to serve, in the following order of priority:

(a) A person previously appointed, qualified, and serving in good standing as guardian for the legally incapacitated individual in another state.

(b) A person the individual subject to the petition chooses to serve as guardian.

(c) A person nominated as guardian in a durable power of attorney or other writing by the individual subject to the petition.

(d) A person named by the individual as a patient advocate or attorney in fact in a durable power of attorney.

(3) If there is no person chosen, nominated, or named under subsection (2), or if none of the persons listed in subsection (2) are suitable or willing to serve, the court *may* appoint as a guardian an individual who is related to the individual who is the subject of the petition in the following order of preference:

(a) The legally incapacitated individual's spouse. This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased spouse.

(b) ***An adult child of the legally incapacitated individual.***

(c) A parent of the legally incapacitated individual. This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased parent.

(d) A relative of the legally incapacitated individual with whom the individual has resided for more than 6 months before the filing of the petition.

(e) A person nominated by a person who is caring for the legally incapacitated individual or paying benefits to the legally incapacitated individual.

(4) If none of the persons as designated or listed in subsection (2) or (3) are suitable or willing to serve, the court may appoint any competent person who is suitable and willing to serve, including a professional guardian as provided in section 5106. [Emphasis added.]

With respect to conservatorships, MCL 700.5409 provides:

(1) The court *may* appoint an individual, a corporation authorized to exercise fiduciary powers, or a professional conservator described in section 5106 to serve as conservator of a protected individual's estate. The following are entitled to consideration for appointment in the following order of priority:

(a) A conservator, guardian of property, or similar fiduciary appointed or recognized by the appropriate court of another jurisdiction in which the protected individual resides.

(b) An individual or corporation nominated by the protected individual if he or she is 14 years of age or older and of sufficient mental capacity to make an intelligent choice, including a nomination made in a durable power of attorney.

(c) The protected individual's spouse.

(d) *An adult child of the protected individual.*

(e) A parent of the protected individual or a person nominated by the will of a deceased parent.

(f) A relative of the protected individual with whom he or she has resided for more than 6 months before the petition is filed.

(g) A person nominated by the person who is caring for or paying benefits to the protected individual.

(h) If none of the persons listed in subdivisions (a) to (g) are suitable and willing to serve, any person that the court determines is suitable and willing to serve.

(2) A person named in subsection (1)(a), (c), (d), (e), or (f) may designate in writing a substitute to serve instead, and that designation transfers the priority to the substitute. If persons have equal priority, the court shall select the person the court considers best qualified to serve. *Acting in the protected individual's best interest, the court may pass over a person having priority and appoint a person having a lower priority or no priority.* [Emphasis added.]

On appeal, Mila and Bonnie claim priority as adult children of Janet and Milan, and contend that the probate court could not appoint a public administrator to serve as guardian and

conservator absent a finding that Mila and Bonnie were not suitable. However, in their written submission to the probate court, Mila and Bonnie asked the court to appoint any one of four individuals, two of whom were public administrators. Mila and Bonnie did not request priority over these public administrators. Further, at the hearing, when the court stated that it would appoint a new public administrator, the following colloquy occurred between the court and Mila's and Bonnie's counsel:

> *The Court*: . . . [W]e'll just try a new public administrator, and –
>
> *Mr. Kuthy*: Okay, I—
>
> *The Court*: —it will be Thomas Fraser.
>
> *Mr. Kuthy*: I understand that, your Honor.
>
> *The Court*: Because I believe . . . that there was not a person in the family for reasons stated within Ms. Andruccioli's response, and for reasons apparent from reading the response—the petitions and responses from both sides, and from the history of this case it is clear to me that there is no one in priority who is suitable to serve as guardian so I must, pursuant to statute, go outside of priority and appoint a professional guardian and I am choosing Mr. Fraser.
>
> *Mr. Kuthy*: Your Honor, I appreciate that.

"Waiver is the intentional relinquishment of a known right. *Sweebe v Sweebe*, 474 Mich 151, 156; 712 NW2d 708 (2006) (citation omitted). The usual manner of waiving a right is by acts which indicate an intention to relinquish it, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive." *Bailey v Jones*, 243 Mich 159, 162; 219 NW 629 (1928) (citations omitted). Thus, a party that acquiesces in the trial court's treatment of an issue waives the issue on appeal. See *People v Carter*, 462 Mich 206, 219-220; 612 NW2d 144 (2000). Given their written representations and the statements of counsel, Mila and Bonnie clearly acquiesced to the appointment of a public administrator as a replacement for Andruccioli. Mila and Bonnie in fact suggested the appointment of either of two public administrators to serve in this role.[2] Under these circumstances, we deem the issue waived.

Third, reaching the merits of their contention, Mila and Bonnie point to no authority that requires a probate court to hold an evidentiary hearing before exercising its discretion in the appointment of a guardian or conservator. As this Court will not search for authority to support a party's position, this argument has been abandoned on appeal. *Peterson Novelties, Inc v City of*

---

[2] In fact, at the December 27, 2016 Status Conference before the probate court, counsel for Mila and Bonnie stated, "What happened at the last hearing, according to my recollection, Judge, was that there was some question in your mind as to who should be the guardian and they objected to my clients, they didn't file a petition, so we said, Judge, we don't care as long as somebody besides Ms. Kapp is in charge."

*Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). In any event, Mila and Bonnie's argument nonetheless fails because the record does not support their contention that the probate court abused its discretion in appointing the successor guardian and conservator. MCL 700.5106(2) directs the probate court to appoint a professional guardian or professional conservator if the probate court finds that (1) the appointment of such a person is in the ward's best interest, and (2) there is no other person competent, suitable, and willing to serve in that capacity in accordance with section 5212, 5313, or 5409. In this case, the probate court determined that the appointment of a professional guardian and conservator was in the best interest of Janet and Milan, and appointed public administrator Barbara Andruccioli. The parties did not challenge that appointment on priority grounds. When Andruccioli requested to resign, the probate court appointed another public administrator to take her place, stating, in relevant part:

> [F]rom the history of this case it is clear to me that there is no one in priority who is suitable to serve as guardian so I must, pursuant to statute, go outside of priority and appoint a professional guardian and I am choosing Mr. Fraser.

On appeal, Mila and Bonnie claim priority as adult children pursuant to MCL 700.5313(3)(b) and MCL 700.5409(1)(d). MCL 700.5313(3) provides that if there is no person under subsection (2) suitable or willing to serve, the probate court *may* appoint an individual pursuant to subsection (3). This Court has held that the Legislature's use of the word "may" in this provision "indicated that the appointment of an individual under MCL 700.5313(3) was to be committed to the discretion of the probate court. *In re Guardianship of Redd*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 335152); slip op at 4, citing *In re Williams Estate*, 133 Mich App 1, 10-11; 349 NW2d 247 (1984). Similarly, when appointing a conservator, the priority statute speaks in discretionary terms, using the word, "may." MCL 700.5409(1). MCL 700.5409(2) further provides that "[a]cting in the protected individual's best interest, the court may pass over a person having priority and appoint a person having a lower priority or no priority." Thus, "[i]t is clear from the statutory wording that the selection of the person to be appointed guardian and conservator is a matter which is committed largely to the discretion of the probate court. . . ." *In re Williams Estate*, 133 Mich App at 11.

The "overarching purpose" of a guardian appointed under Michigan's Estates and Protected Individuals Code (EPIC) is to "provide for the ward's care, custody, and control." *Redd*, ___ Mich App at ___; slip op at 3, citing MCL 700.5314. The duties of the guardian include providing for the ward's financial, medical, and social well-being. *Id*. "The EPIC thus makes clear that the guardian's focus of concern must be on the ward, that decisions made on behalf of the ward must be in the interests of the ward and not the guardian, and that the guardian must be qualified to achieve the purposes set forth in the EPIC." *Id*. This Court has further stated that a "suitable guardian" within the meaning of EPIC is "one who is qualified and able to provide for the ward's care, custody, and control." *Id*. at ___; slip op at 4 (quotation marks and citation omitted.)

In this case, the record demonstrates that this is a highly contentious and antagonistic family situation. After holding numerous hearings on numerous petitions filed by the parties in these consolidated cases, the probate court was well aware of the family dynamics and aptly explained, "the petitions and responses from both sides, and . . . the history of this case" made it entirely "clear . . . that there is no one in priority who is suitable to serve as guardian . . . ."

Under these circumstances, we find no abuse of discretion by the probate court in appointing a public administrator as successor guardian and conservator.

## B. SUPPLEMENTAL CONTEMPT PETITION

Mila and Bonnie next contend that the trial court abused its discretion and denied them their due process rights by denying their supplemental petition to hold Lorrie and Sandy in contempt without permitting oral argument. This allegation is without merit.

We review a probate court's dispositional rulings for an abuse of discretion. See *In re Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). A probate court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Id*. at 397. Mila and Bonnie first filed a petition seeking to hold Lorrie and Sandy in contempt on January 11, 2017. The petition alleged that Lorrie and Sandy were violating an earlier order regarding visitation by interfering with calls and visits by Mila and Bonnie. The probate court held a hearing regarding this petition, among others, on February 1, 2017. At the hearing, the probate court noted that Mila and Bonnie had not participated in the court-ordered facilitation that was to address all of the parties' issues regarding visitation. The probate court therefore denied the petition without prejudice, finding it premature. At the conclusion of the hearing, the probate court again directed the parties that all visitation issues were to be addressed first in facilitation.

But instead of participating in the ordered facilitation, Mila and Bonnie filed what they titled a "supplement" to the petition seeking to hold Lorrie and Sandy in contempt, which had already been dismissed without prejudice as premature by the probate court. This supplemental petition requested that the probate court modify the visitation schedule to expand Mila's and Bonnie's visitation with the parents, alleging that Janet's health was deteriorating. Having dismissed the earlier petition as premature, and having directed the parties to discuss all visitation issues in facilitation, the probate court understandably denied this new "supplemental" petition regarding visitation without additional oral argument. Because the probate court had already heard oral argument on the petition to hold Lorrie and Sandy in contempt on the matter of the visitation schedule, we detect no abuse of the probate court's discretion in its denial of the supplemental petition, which again raised visitation issues that the probate court had addressed and found to be premature pending facilitation.

## C. SUPPLEMENTAL PETITIONS TO MODIFY CONSERVATORSHIP

Finally, Mila and Bonnie contend that the probate court denied them due process by failing to address the supplemental petitions to modify the conservatorships at the March 29, 2017 hearing. We disagree. The supplemental petitions to modify the conservatorships reiterated the earlier petitions regarding the conservatorships, asserting that Mila and Bonnie did not object to Andruccioli being replaced, and suggesting four names for consideration for the conservatorships. At the hearing held March 29, 2017, the probate court addressed the issue of appointing a successor guardian and conservator and resolved that issue by appointing Thomas Fraser. As discussed, Mila and Bonnie acquiesced to the appointment of Fraser at the hearing.

Under these circumstances, we find no abuse of discretion by the probate court.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien